**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Oldfield,* **Slip Opinion No. 2014-Ohio-2963.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2963

DISCIPLINARY COUNSEL *v*. OLDFIELD.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Oldfield,* Slip Opinion No. 2014-Ohio-2963.]**

*Judges—Misconduct—Failure to promote confidence in judiciary—Failure to avoid impropriety or appearance of impropriety—Failure to recuse from proceedings when impartiality might be questioned—Conduct prejudicial to administration of justice—Public reprimand.*

(No. 2013-1623—Submitted March 12, 2014—Decided July 9, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2013-029.

_____

KENNEDY, J.

{¶ 1} Respondent, Judge Joy Malek Oldfield of Akron, Ohio, Attorney Registration No. 0073065, was admitted to the practice of law in Ohio in November 2000. Judge Oldfield has served on the Akron Municipal Court since January 2012.

**{¶ 2}** On April 26, 2013, relator, disciplinary counsel, filed a one-count complaint charging Judge Oldfield with violations of the Code of Judicial Conduct and the Rules of Professional Conduct. Judge Oldfield answered, denying that she had committed any violations.

**{¶ 3}** The complaint centers on Judge Oldfield's conduct from February 5 to February 17, 2012, and alleges that during that time, she violated Jud.Cond.R. 1.2 ("A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety"), 1.3 ("A judge shall not abuse the prestige of judicial office to advance the personal or economic interests of the judge or others, or allow others to do so"), and 2.11(A) ("A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned * * *"). Relator also alleges that Judge Oldfield engaged in conduct prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d).

**{¶ 4}** On August 26, 2013, a panel of the Board of Commissioners on Grievances and Discipline conducted a hearing. Based upon the testimony of Judge Oldfield and other witnesses, the parties' factual stipulations, and exhibits, the panel unanimously recommended dismissal of the Jud.Cond.R. 1.3 allegation, finding that the violation had not been proved by clear and convincing evidence. The panel found that relator had proved by clear and convincing evidence that Judge Oldfield committed the other charged violations and recommended a public reprimand. The board adopted the panel's findings of fact, conclusions of law, including the recommended dismissal of the Jud.Cond.R. 1.3 violation, and recommended sanction. Neither party filed objections to the recommended sanction.

**{¶ 5}** However, relator objects to the board's recommendation to dismiss the allegation of a Jud.Cond.R. 1.3 violation. He argues that the board improperly

applied a subjective test to determine that he had not proved by clear and convincing evidence that Judge Oldfield abused the prestige of her office. Relator asserts that regardless of Judge Oldfield's actual motives, a reasonable person would believe that Judge Oldfield did in fact abuse the prestige of her office to advance her own interests or the interests of another. We agree with relator that Jud.Cond.R. 1.3 imposes an objective standard, but as we will explain, we do not agree that the board applied a different standard. We therefore overrule relator's objections and adopt the board's findings of fact and misconduct and recommended sanction.

**Facts**

{¶ 6} The following facts are supported by the record. On Saturday, February 4, 2012, Judge Oldfield and her husband attended a social engagement that lasted into Sunday. Catherine Loya, the public defender assigned to Judge Oldfield's courtroom, also attended. Judge Oldfield's husband left around midnight, and Loya agreed, at the husband's request, to drive Judge Oldfield home later. Sometime after 1:00 a.m. on Sunday, Judge Oldfield and Loya left the party and stopped in a shopping-center parking lot, where they remained in the car, smoking and talking.

{¶ 7} Fifteen to 30 minutes later, Copley police officer Tom Ballinger noticed Loya's car and investigated. He requested identification from Judge Oldfield and Loya. They provided it, and shortly thereafter, two other police officers, including Copley Township police officer Brian W. Price, arrived in separate cars.

{¶ 8} Smelling alcohol, Ballinger asked Loya to perform field sobriety tests. When she refused, Ballinger arrested her for having physical control of a vehicle while under the influence of alcohol. During exchanges with the police at the time of the arrest, Judge Oldfield remarked that she was a judge.

{¶ 9} Loya was placed in the cruiser to be taken to the police station. At Judge Oldfield's request, Price drove her to the station to be with Loya. During that trip, Judge Oldfield told the officer that she was not asking for special treatment because she was a judge.

{¶ 10} Because Loya refused to perform the field sobriety tests or take a breath-alcohol test, her driving privileges were immediately suspended. After Loya was booked, a Copley police officer drove Loya and Judge Oldfield to the judge's house, where Loya spent the next three nights until her driving privileges were restored, apparently at her arraignment. During those three days, Judge Oldfield drove Loya to and from work. Judge Oldfield did not disqualify herself from cases on which Loya represented clients in her courtroom. After obtaining the permission of the municipal prosecutor and public defender, Judge Oldfield presided over 53 such cases until February 17, when Loya's supervisor rotated Loya out of Judge Oldfield's courtroom to avoid adverse publicity. In September 2012, a jury found Loya guilty of the physical-control violation.

**Alleged Violations**

{¶ 11} Jud.Cond.R. 1.3 provides, "A judge shall not abuse the prestige of judicial office to advance the personal or economic interests of the judge or others, or allow others to do so." Comment [1] to Jud.Cond.R. 1.3 explains that it is improper for a judge to use or attempt to use his or her position "to gain personal advantage or deferential treatment of any kind. For example, it would be improper for a judge to allude to his or her judicial status to gain favorable treatment in encounters with traffic officials."

{¶ 12} We agree with the panel and board that relator did not prove a Jud.Cond.R. 1.3 violation by clear and convincing evidence. Testimony was contradictory. Ballinger testified that as Loya was being handcuffed, Judge Oldfield said, "Oh, don't do that. I'm the one that's been drinking. Will it help if I tell you I'm a judge?" Judge Oldfield remembers the incident differently.

According to the judge, she told the officers that she was the one who had been drinking. One of the officers then asked her why Loya would not take the field sobriety tests if she had not been drinking, and Judge Oldfield responded, "Well, those tests aren't always reliable." The officer then asked, "What are you, some kind of lawyer?" Judge Oldfield said that she responded honestly, "Yeah, actually, I've been an attorney for some time and now I'm a judge."

{¶ 13} Relator objects to the board's recommendation to dismiss the allegation of a Jud.Cond.R. 1.3 violation. According to relator, divulging her status as a judge was gratuitous, and Judge Oldfield did so to discourage Loya's arrest. He asserts that "[s]imply disclosing one's status as a judge in certain situations violates the rule." Relator states that viewed objectively, Judge Oldfield's statements "abuse[d] the prestige of judicial office to advance the personal * * * interests of the judge or others." Jud.Cond.R. 1.3. He argues that by relying on Officer Price's statement that he did not believe that the judge was seeking special treatment, the board improperly applied a subjective test to determine that relator had not proved by clear and convincing evidence that Judge Oldfield abused the prestige of her office. Relator asserts that regardless of Judge Oldfield's actual motives, a reasonable person would believe that Judge Oldfield did in fact abuse the prestige of her office to advance her own interests.

{¶ 14} Our review of the record supports the findings of the panel and the board. The panel report did refer to Officer Price's remark that he never thought that she was trying to use her position to advance her interests. But the panel did not single out Price's belief as the sole basis for its conclusion that relator failed to prove a violation of the rule. The panel discussed the testimony, the stipulations, and the incident report, including claims by two other officers that the judge requested special treatment. The panel pointed out that no other witness on the scene corroborated Ballinger's statement that Judge Oldfield had ever said, "Will it help if I tell you I'm a judge?" The panel further noted that other

statements by the judge allegedly seeking to gain advantage from her position were made to an officer who did not testify, and the panel concluded that since the judge herself denied making the statements and no other witness testified to hearing them, the evidence did not establish that the statements were made.

{¶ 15} Therefore, the panel concluded that the evidence was contradictory and that the record, taken as a whole, did not produce "a firm conviction" that Judge Oldfield used her judicial title to influence the officers to accord her or Loya special treatment or that her conduct gave the appearance that she was using her title for that purpose. We find that the panel reviewed the record using an objective standard to determine whether Judge Oldfield's conduct created an appearance of impropriety, i.e., whether her behavior would create, in reasonable minds, a perception that she was improperly using her position to gain favor. We therefore overrule relator's objections and adopt the recommendation of the board to dismiss Jud.Cond.R. 1.3.

{¶ 16} We also agree with the panel and board that Judge Oldfield's conduct violated Jud.Cond.R. 1.2 and 2.11 and Prof.Cond.R. 8.4(d). Because Loya was temporarily living with Judge Oldfield and because the judge was a potential witness in Loya's criminal prosecution, Judge Oldfield should have recused herself from cases in which Loya was representing clients. Under the circumstances, her "impartiality might reasonably be questioned." Jud.Cond.R. 2.11(A). By creating this appearance of impropriety, Judge Oldfield failed to promote public confidence in the judiciary as required by Jud.Cond.R. 1.2. This violation is of all the more concern because the association with Loya occurred in the context of Loya's arrest. "The sight or thought of a judge providing a ride home to a person who has just been detained for breaking the law surely gives the impression of bias on the judge's part when it comes time to hear that case." *Disciplinary Counsel v. Medley*, 93 Ohio St.3d 474, 476-477, 756 N.E.2d 104 (2001). This impression of bias arises whether the law-breaking associate appears

in the judge's courtroom as a defendant or as a lawyer. We also find that these violations of the Code of Judicial Conduct comprise a violation of Prof.Cond.R. 8.4(d).

**Sanction**

**{¶ 17}** In determining the appropriate sanction for judicial misconduct, we consider the ethical duties violated, the injury caused, the existence of aggravating and mitigating circumstances listed in BCGD Proc.Reg. 10(B), and our precedent. *Disciplinary Counsel v. Campbell*, 126 Ohio St.3d 150, 2010-Ohio-3265, 931 N.E.2d 558, ¶ 53, citing *Disciplinary Counsel v. Sargeant*, 118 Ohio St.3d 322, 2008-Ohio-2330, 889 N.E.2d 96, ¶ 28, and *Disciplinary Counsel v. Evans*, 89 Ohio St.3d 497, 501, 733 N.E.2d 609 (2000).

*1. Duties violated and injuries caused*

**{¶ 18}** "It is of utmost importance that the public have confidence in the integrity and impartiality of the judiciary." *Disciplinary Counsel v. Allen*, 79 Ohio St.3d 494, 495, 684 N.E.2d 31 (1997). Jud.Cond.R. 1.2 requires a judge to promote public confidence in the impartiality of the judiciary and to avoid even the appearance of impropriety. In furtherance of this requirement, Jud.Cond.R. 2.11 commands that a judge disqualify herself from a case in which she has a personal bias or prejudice "concerning a party or a party's lawyer," Jud.Cond.R. 2.11(A)(1), and also from "any proceeding in which the judge's impartiality might reasonably be questioned," Jud.Cond.R. 2.11(A).

**{¶ 19}** Here, the board properly found that Judge Oldfield's impartiality from February 6, 2012, to February 17, 2012, when Loya was assigned to a different courtroom, could have reasonably been questioned. The board observed that her failure to recuse herself created the appearance of impropriety because she argued against Loya's arrest at the scene, because she took Loya into her home for three days and transported her to and from work in her own courtroom, and because she was a potential witness in Loya's criminal case, among other

reasons. These facts also support the board's conclusion that Judge Oldfield violated Prof.Cond.R. 8.4(d).

### 2. Aggravating and mitigating factors

**{¶ 20}** The board found one aggravating factor: that Judge Oldfield had engaged in a pattern of misconduct by failing to disqualify herself in 53 cases in which Loya represented defendants in her courtroom right after Loya's arrest. *See* BCGD Proc.Reg. 10(B)(1)(c). *Ohio State Bar Assn. v. Evans*, 137 Ohio St.3d 441, 2013-Ohio-4992, 999 N.E.2d 674, ¶ 15.

**{¶ 21}** In mitigation, the board found (1) an absence of a prior disciplinary record, (2) full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, and (3) good character and reputation. *See* BCGD Proc.Reg. 10(B)(2)(a), (d), and (e). As to the third factor, the parties jointly submitted scores of letters from Judge Oldfield's colleagues and associates attesting to her commitment to the community, her work ethic, and her professional excellence. The board also noted that no litigants had been harmed by Judge Oldfield's misconduct and that Judge Oldfield presided over no contested cases in which Loya represented defendants.

### 3. Applicable precedent

**{¶ 22}** We have imposed public reprimands in other cases in which a judge violated the Code of Judicial Conduct requiring a judge to promote public confidence in the judiciary and act impartially. *See Medley*, 93 Ohio St.3d at 477-478, 756 N.E.2d 104; *Ohio State Bar Assn. v. Goldie,* 107 Ohio St.3d 201, 2005-Ohio-6186, 837 N.E.2d 782; *Disciplinary Counsel v. Kubilus,* 101 Ohio St.3d 29, 2003-Ohio-6610, 800 N.E.2d 1131. While we have further found that Judge Oldfield engaged in conduct prejudicial to the administration of justice, we also note that as in *Medley,* the judge submitted substantial mitigating evidence. Based on Judge Oldfield's conduct, the single aggravating factor, substantial

mitigation, and our precedent, we agree with the board that a public reprimand is the appropriate sanction.

{¶ 23} Therefore, we publicly reprimand Judge Joy Malek Oldfield for her violations of Jud.Cond.R. 1.2 and 2.11 and Prof.Cond.R. 8.4(d). Costs are taxed to Judge Oldfield.

Judgment accordingly.

PFEIFER, O'DONNELL, FRENCH, and O'NEILL, JJ., concur.

O'CONNOR, C.J., and LANZINGER, J., dissent in part.

_____

**O'CONNOR, C.J., dissenting in part.**

{¶ 24} I concur with the majority's decision adopting the recommendation of the Board of Commissioners on Grievances and Discipline that we find a violation of Jud.Cond.R. 1.2 and 2.11 and Prof.Cond.R. 8.4(d).[1] I also concur that public reprimand is a sufficient sanction. I dissent, however, from the majority's decision to adopt the board's recommendation to dismiss the allegation that Judge Oldfield violated Jud.Cond.R. 1.3. Because the majority's decision is based on a skewed view of the evidence in the record, I would sustain the relator's objection to the board's recommendation and find a violation of Jud.Cond.R. 1.3.

{¶ 25} In upholding the board's conclusion to dismiss the violation of Jud.Cond.R. 1.3, the majority ignores Judge Oldfield's own testimony and places undue weight on a testifying officer's subjective belief about the judge's statements. I find no support for the majority's acceptance of the board's

---

[1] The majority cites the troubling fact that, after the incident, Judge Oldfield continued to preside over 53 cases in which Loya represented clients in her courtroom. According to the majority, this occurred after Judge Oldfield obtained "permission of the municipal prosecutor and public defender." Majority opinion at ¶ 10. Nothing in the Code of Judicial Conduct, expressly or implicitly, permits such an approach. Although the majority upheld the imposition of a Jud.Cond.R. 2.11 violation and concluded that Judge Oldfield should have recused herself from these cases, I address this here to discourage the future use of the majority's language as tacit approval of Judge Oldfield's approach.

determination that the evidence in the record was contradictory or insufficient as a whole to sustain a violation of the rule.

{¶ 26} There is no dispute, and the parties stipulated, that Judge Oldfield identified herself as a judge at least twice during the incident. First, "during discussions with police officers, respondent indicated that she was a judge." Second, "[o]n route to the Copley police station, respondent communicated that she was not asking for special treatment because she was a judge."

{¶ 27} Importantly, Judge Oldfield's first mention of her status as a judge to the officers was gratuitous and, contrary to the majority's characterization, more than a mere "remark[]." Majority opinion at ¶ 8. During the arrest, Officer Garner asked a "yes or no" question—whether Judge Oldfield was a lawyer. Judge Oldfield testified that she responded, "Yeah, actually, I've been an attorney for some time and now I'm a judge." Judge Oldfield acknowledged that she could have responded truthfully in a number of alternative ways, including by offering simply that she was licensed to practice law. The specific mention of her judgeship in response was not solicited or required, nor should it have been offered. Indeed, it served only one purpose: to make sure that the officer knew that she was a judge.

{¶ 28} Judge Oldfield's gratuitous disclosure is sufficient alone in the context here to establish that a reasonable person would believe that Judge Oldfield abused the prestige of her office to advance her own and Loya's interests in violation of Jud.Cond.R. 1.3. But Judge Oldfield's references to her judgeship did not stop there, and additional facts glossed over by the majority further support the conclusion that the rule was violated.

{¶ 29} Once Judge Oldfield mentioned her judgeship, she continued to insert herself into Loya's arrest and booking. Even though the officers offered to take Judge Oldfield home after the arrest, she requested to go to the police station

and wait for Loya. Both Officer Price and Judge Oldfield testified that on the way back to the station, Judge Oldfield asked what could be done to help Loya. Both Officer Price and Judge Oldfield testified that once at the station, the judge again asked whether she could do anything to help Loya, and the judge testified that she requested and received permission to make a phone call to Loya. Thus, the officers were presented with someone who repeatedly identified herself as a judge and repeatedly asked them what could be done to help the judge's friend who had been charged with a criminal violation.

{¶ 30} The majority found persuasive the board's concern about the lack of corroboration for the officers' testimony. But it is unclear what corroboration could exist. For example, Officer Price testified about statements made by Judge Oldfield to him with no one else present. No corroborating evidence, other than from Judge Oldfield, could exist. And some of Judge Oldfield's own testimony did corroborate significant details in Officer Price's testimony.

{¶ 31} Even without corroboration, credibility can be assessed by the measure of one's motivation for honesty. Here, there is no showing that the officers would be motivated to lie. If anything, it would seem that officers who serve municipalities near the court on which Judge Oldfield sits would be more likely to be particularly truthful about the events that occurred. Therefore, I find the officers' testimony regarding Judge Oldfield's repeated statements credible.

{¶ 32} The weight of this evidence should be sufficient under an objective standard to find a violation of Jud.Cond.R. 1.3. Seemingly to the exclusion of this testimony, however, the board afforded significant weight to Officer Price's subjective belief that he never thought that Judge Oldfield was using her position to advance her interests. I find that the evidence does not support the majority's conclusion that the board reviewed the record using an objective standard.

**{¶ 33}** Instead, I find that the evidence as a whole establishes that a reasonable person would believe that Judge Oldfield abused the prestige of her office to advance her and Loya's interests. Therefore, I would sustain relator's objection to the board's dismissal of the Jud.Cond.R. 1.3 allegation and would find that Judge Oldfield violated the rule.

**{¶ 34}** Because I do not believe that finding a violation of Jud.Cond.R. 1.3 requires a harsher sanction, I agree with the majority's decision to impose a sanction of public reprimand. But because the majority's decision to adopt the dismissal of the Jud.Cond.R. 1.3 allegation is not supported by the record, I must dissent.

LANZINGER, J., concurs in the foregoing opinion.

_____

Scott J. Drexel, Disciplinary Counsel, and Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, for relator.

Montgomery, Rennie & Jonson, George D. Jonson, and Lisa M. Zaring, for respondent.

_____