**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Williams,* **Slip Opinion No. 2016-Ohio-827.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-827

DISCIPLINARY COUNSEL *v.* WILLIAMS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Williams,* Slip Opinion No. 2016-Ohio-827.]**

*Attorneys—Misconduct—Violations of the Code of Judicial Conduct and the Rules of Professional Conduct, including engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Two-year suspension with 18 months stayed on conditions.*

(No. 2015-0293—Submitted September 2, 2015—Decided March 8, 2016.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2014-043.

_____

**Per Curiam.**

{¶ 1} Respondent, Orlando Joseph Williams of Cincinnati, Ohio, Attorney Registration No. 0033558, was admitted to the practice of law in Ohio in 1986. On June 9, 2014, relator, disciplinary counsel, charged Williams with professional

misconduct arising from his sexual relationship with a party in an eviction action over which he presided as a magistrate, his falsification of a loan application for the purchase of a motor vehicle, and his misappropriation of wrongful-death proceeds that were intended to finance an annuity for the benefit of the decedent's minor children.

{¶ 2} Relator and Williams subsequently submitted joint stipulations of fact, violations, aggravating and mitigating factors, and exhibits and jointly recommended that Williams be suspended from the practice of law for two years with one year stayed on conditions.

{¶ 3} A panel of the Board of Professional Conduct adopted all but one of the parties' stipulations but recommended that Williams be suspended from the practice of law for two years with no stay. The board adopted the panel's findings of fact and conclusions of law but recommended that Williams be indefinitely suspended from the practice of law.

{¶ 4} Williams objects and argues that his conduct does not warrant an indefinite suspension from the practice of law and urges us to adopt the parties' stipulated sanction of a two-year suspension with one year stayed on conditions. Relator joins Williams in requesting that we reject the board's recommendation and, at a minimum, suspend him for two years with one year stayed on conditions.

{¶ 5} We adopt the board's findings of fact and misconduct. But we sustain Williams's objection and suspend him from the practice of law in Ohio for two years with the final 18 months stayed on conditions.

**Misconduct**

*Count One—Failure to Recuse*

{¶ 6} Williams was appointed to the Akron Municipal Court in March 2009. After he lost his bid to retain that position in the November 2009 general election, he accepted a position as a magistrate in the same court and as part of his duties, presided over eviction cases. In May 2012, while assigned to a case in which a

landlord sought to evict tenant A.B., Williams entered into a sexual relationship with A.B. and failed to immediately recuse himself from the case. Several weeks later, after learning that A.B. had been pulled over for operating a vehicle while under the influence and had repeatedly referred to Williams as her boyfriend, four Akron Municipal Court judges met with Williams, at which time he admitted to his relationship with A.B. Thereafter, he signed a recusal entry and resigned from his employment as a magistrate.

{¶ 7} On these facts, the parties agreed and the board found that Williams violated Jud.Cond.R. 1.2 (requiring a judge or magistrate to avoid impropriety and the appearance of impropriety and to act at all times in a manner that promotes public confidence in the integrity, impartiality, and independence of the judiciary) and Jud.Cond.R. 2.11(A) (requiring a judge or magistrate to disqualify himself or herself from any proceeding in which the impartiality of the judge or magistrate might be reasonably questioned). Consistent with the parties' stipulations, the panel dismissed two additional alleged violations.

*Count Two—Fraudulent Loan Application*

{¶ 8} After Williams resigned from his employment, he worked as an associate attorney at a Columbus law firm. But that employment was terminated on May 3, 2013. Several days later, Williams and A.B. purchased a used car from an Akron car dealer. On his credit application, Williams listed a residential address that he had not leased for over a year, falsely stated that he was still employed by the Columbus firm, and falsely stated that he was earning $7,500 per month. He signed the application, certifying that this false information was true. With Williams's knowledge and consent, A.B. altered one of his paystubs to increase his income and withholdings and submitted it with his loan application. Williams later defaulted on the loan and the vehicle was repossessed.

{¶ 9} The board adopted the parties' stipulation that this conduct violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving

dishonesty, fraud, deceit, or misrepresentation) and dismissed one other alleged violation with respect to this count.

*Count Three—Misappropriation of Wrongful-Death Benefits*

{¶ 10} In November 2007, Williams filed an application seeking the appointment of Pamela Schaffer as fiduciary for the estate of decedent Anthony Criss in the Summit County Probate Court. The court approved a $25,000 wrongful-death settlement, and Williams deposited the proceeds into his client trust account. Williams made several distributions pursuant to the probate court's order, but he was unable to apply $10,798.50 toward the purchase of an annuity for the benefit of Criss's three minor children within 30 days of the settlement as ordered by the court. This failure was reportedly due to the fact that the settlement funds had been deposited into Williams's client trust account instead of being remitted directly to the annuity company by the insured.

{¶ 11} In April 2011, the probate court magistrate wrote to Williams to request that he take action to close the estate, but Williams did not receive the letter. After the probate judge issued a show-cause order, Williams appeared and informed the court that the funds remained in his client trust account. He stated that he would invest them in a money-market account for the benefit of the Criss children.

{¶ 12} As of November 1, 2012, all of the funds belonging to the Criss children remained in Williams's client trust account. But over the next two months, Williams misappropriated nearly all of those funds. In May 2013, he liquidated his retirement account and deposited $10,000 into his client trust account to replace most of the funds he had misappropriated. However, he misappropriated the money a second time, leaving only $6.31 in the account. In October 2013, he again replaced the misappropriated funds by depositing $10,810 of his personal funds into the client trust account.

{¶ 13} The parties stipulated and the board found that Williams's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in

4

representing a client), 8.4(c), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

### Sanction

**{¶ 14}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B).[1] *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 15}** Williams testified that he had no intention of continuing to serve as the magistrate in A.B.'s eviction case after their relationship had begun but that he did not know the proper procedure for recusing himself. He further testified that A.B. abused him throughout their relationship and that her abuse contributed to his stipulated misconduct. Williams entered into a five-year contract with the Ohio Lawyers Assistance Program ("OLAP") on July 16, 2013, and reported that he was diagnosed with post-traumatic stress disorder ("PTSD") as a result of A.B.'s abuse.[2] But he offered no medical records to document that diagnosis or its causal relationship to his misconduct. Consequently, the board did not afford any mitigating effect to his PTSD. *See* BCGD Proc.Reg. 10(B)(2)(g) (setting forth requirements for consideration of a mental disability as a mitigating factor).

**{¶ 16}** The parties stipulated that relevant mitigating factors include the absence of a prior disciplinary record, a timely, good-faith effort to make restitution, full and free disclosure to the board, and positive character evidence in

---

[1] Effective January 1, 2015, the aggravating and mitigating factors previously set forth in BCGD Proc.Reg. 10(B)(1) and (2) are codified in Gov.Bar R. V(13), 140 Ohio St.3d CXXIV.

[2] Relator received an e-mail from OLAP director Scott Mote regarding Williams's PTSD and does not dispute the diagnosis.

the form of two character letters. *See* BCGD Proc.Reg. 10(B)(2)(a), (c), (d), and (e). The board accepted the stipulated mitigating factors with one exception. Because Williams had endeavored to make only partial restitution by issuing a $10,800 check to his attorney's trust account just one day before his disciplinary hearing—but had not yet made the Criss children whole—the board rejected the parties' stipulation that Williams made a timely, good-faith effort to pay restitution. The record does not establish how much the children's $10,800 investment would have been worth had Williams purchased the annuity as ordered by the court. At oral argument Williams's counsel stated, and relator agreed, that the children lost approximately $9,000 as a result of Williams's misconduct.

{¶ 17} As aggravating factors, the parties stipulated and the board found that Williams acted with a dishonest or selfish motive and engaged in multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(b) and (d).

{¶ 18} The parties jointly recommended that Williams be suspended from the practice of law for two years with one year stayed on the conditions that he commit no further misconduct and remain in compliance with his OLAP contract. The panel, however, believed that Williams's misconduct warranted a two-year suspension with no stay and recommended that his reinstatement be conditioned upon the commission of no further misconduct, compliance with his OLAP contract, and payment of full restitution to the Criss children—$10,798.50 plus the interest they would have earned if he had timely purchased an annuity for their benefit as ordered by the probate court on February 6, 2009. The board recommended that Williams be indefinitely suspended from the practice of law and, in addition to the panel's recommended conditions for reinstatement, would require Williams to make full restitution within six months of the date of our order.

*Williams's Objections*

{¶ 19} Williams first challenges the board's failure to accord any mitigating effect to the abuse he suffered at the hands of A.B., which included threats of

6

physical harm and emotional pain. Williams testified that A.B. stabbed him on four separate occasions, that he twice sought medical care for knife wounds, and that their arguments were related to A.B.'s demands that he withdraw funds from his client trust account and use them for her personal benefit. He contends that the abuse he suffered clouded his judgment and emphasizes that he not only moved across the state to extricate himself from the unhealthy relationship but also sought assistance from OLAP—including mental-health counseling—in an effort to save his once successful legal career.

{¶ 20} Williams also argues that his misconduct does not warrant an indefinite suspension. He cites several cases in which we have imposed two-year suspensions (some partially stayed) for comparable misconduct involving misappropriation and making false statements. Relator agrees that Williams's misconduct does not warrant an indefinite suspension and urges us to impose a suspension of at least two years with one year stayed on conditions.

{¶ 21} In *Disciplinary Counsel v. Simon-Seymour*, 131 Ohio St.3d 161, 2012-Ohio-114, 962 N.E.2d 309, we suspended an attorney for two years, with the final six months stayed on conditions, for misappropriating more than $17,000 from a decedent's estate over a period of years and submitting false documents to conceal that misappropriation from the court. Although Simon-Seymour engaged in a pattern of misconduct, we also found that she had no prior disciplinary record, made full and free disclosure during the disciplinary investigation, displayed a cooperative attitude toward the proceedings, and made full restitution. *Id.* at ¶ 9.

{¶ 22} In *Columbus Bar Assn. v. King*, 132 Ohio St.3d 501, 2012-Ohio-873, 974 N.E.2d 1180, we imposed a two-year suspension on an attorney who failed to maintain adequate records of the client funds in his possession, misappropriated more than $100,000 from his client trust account to cover his own personal and business expenses, and fabricated a fee dispute in an attempt to justify his delay in returning those funds. We also required King to complete one year of monitored

probation and at least 12 hours of continuing legal education ("CLE") in accounting and law-office management. *Id.* at ¶ 16.

{¶ 23} And in *Disciplinary Counsel v. Blair*, 128 Ohio St.3d 384, 2011-Ohio-767, 944 N.E.2d 1161, the attorney misappropriated nearly $17,000 belonging to an incompetent ward, failed to maintain required client-trust-account records, and obtained eight separate 30-day extensions to file her guardianship accounting. *Id.* at ¶ 4, 7. She also failed to properly supervise her employees who prepared false documents, signed the attorney's name and notarized the forged signature, and then filed the documents in the probate court. *Id.* at ¶ 11-12. Although Blair acted with a selfish motive, she had no prior disciplinary record, made a timely, good-faith effort to provide restitution, made full and free disclosure to the board, demonstrated a cooperative attitude toward the disciplinary proceedings, and established that her alcohol dependence and recurrent major depressive disorder were mitigating factors pursuant to BCGD Proc.Reg. 10(B)(2)(g). *Id.* at ¶ 15-16. We suspended her from the practice of law for two years with 18 months stayed on the conditions that she serve a period of monitored probation, remain in compliance with her OLAP contract, continue to receive alcohol and mental-health counseling, and complete a CLE course in law-office management. *Id.* at ¶ 21.

{¶ 24} We conclude that the misappropriation and false statements at issue in this case are most comparable to the conduct at issue in *Blair* and that Williams's additional misconduct in failing to promptly recuse himself from A.B.'s eviction case does not significantly increase the magnitude of his misconduct. *See, e.g.*, *Disciplinary Counsel v. Oldfield*, 140 Ohio St.3d 123, 2014-Ohio-2963, 16 N.E.3d 581 (publicly reprimanding a judge who actually presided over 53 cases in which a public defender appeared as counsel while she was living in the judge's home and riding to the courthouse with the judge each day); *Ohio State Bar Assn. v. Vukelic*, 102 Ohio St.3d 421, 2004-Ohio-3651, 811 N.E.2d 1127 (publicly reprimanding a

part-time magistrate who failed to immediately recuse himself when one of his domestic-relations clients appeared before him on two misdemeanor charges).

**{¶ 25}** And although Williams did not establish that his PTSD was a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g), we acknowledge that he practiced law without incident for more than 20 years before he commenced his improper relationship with A.B., and we conclude that the abuse he endured during their relationship contributed significantly to his stipulated misconduct. Therefore, we sustain Williams's objections to the board's recommended sanction and conclude that a two-year suspension, with 18 months stayed on stringent conditions, is the appropriate sanction for Williams's misconduct.

**{¶ 26}** Accordingly, Orlando Joseph Williams is suspended from the practice of law in Ohio for two years with 18 months stayed on the conditions that he remain in full compliance with his OLAP contract, continue to participate in mental-health counseling for his PTSD, engage in no further misconduct, make full restitution to the Criss children—$10,798.50 plus the interest they would have earned if he had timely purchased an annuity for their benefit as ordered by the probate court on February 6, 2009—within two years of the date of our order, and satisfactorily complete an 18-month period of monitored probation in accordance with Gov.Bar R. V(21). If he fails to comply with the conditions of the stay, the stay will be lifted, and he will serve the full two-year suspension. Costs are taxed to Williams.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL and LANZINGER, JJ., dissent and would adopt the position of the panel and impose a suspension of two years without stay.

_____

Scott J. Drexel, Disciplinary Counsel, and Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, for relator.

Montgomery, Rennie & Jonson, L.P.A., and George D. Jonson, for respondent.

_____