TOLEDO BAR ASSOCIATION *v.* STEWART.

[Cite as *Toledo Bar Assn. v. Stewart*, 135 Ohio St.3d 316, 2013-Ohio-795.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failure to act with reasonable diligence in representing a client, failure to maintain separate account and to keep complete records of trust account, and failure to cooperate in a disciplinary investigation—Two-year suspension, 12 months stayed on conditions.*

(No. 2012-1338—Submitted January 9, 2013—Decided March 12, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-014.

_____

**Per Curiam**.

{¶ 1} Respondent, John C. Stewart of Lambertville, Michigan, Attorney Registration No. 0042580, was admitted to the practice of law in Ohio in 1989. He is also licensed to practice law in Michigan. In a second amended complaint, relator, Toledo Bar Association, has charged Stewart with professional misconduct in his handling of five separate client matters.[1] The alleged misconduct consists mainly of accepting retainers from clients and then failing to perform the contracted work, failing to reasonably communicate with the clients, failing to return client files and the unearned portion of their fees on termination

_____

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Disciplinary Rules of the Code of Professional Responsibility. Although both the former and current rules are cited for the same acts, the allegations comprise a single continuing ethical violation. *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1.

of his representation, and failing to cooperate in several of the resulting disciplinary investigations.

{¶ 2} At the hearing before a panel of the Board of Commissioners on Grievances and Discipline, the parties submitted 47 exhibits, including several stipulations of fact, and presented testimony from seven witnesses, including Stewart. The panel found that relator had proven a number of violations by clear and convincing evidence but, in the absence of testimony from certain grievants, recommended that Count One and certain alleged violations in Counts Two, Four, and Five be dismissed. Having considered the proven misconduct, the applicable aggravating and mitigating factors, and the sanctions we have imposed for comparable misconduct, the panel recommended that Stewart be suspended from the practice of law for two years, with one year stayed on conditions. The board adopted the panel's findings of fact and misconduct, as well as its recommended sanction, and there are no objections.

{¶ 3} We adopt certain of the board's findings of fact and misconduct, suspend Stewart from the practice of law for two years, and stay the second year on the conditions recommended by the board.

**Misconduct**

**Count One**

{¶ 4} The first count of relator's complaint alleges that Stewart failed to act with reasonable diligence in handling a client's divorce matter and that he failed to keep the client reasonably informed about the status of the matter. The client was not subpoenaed and did not appear at the hearing. Consequently, relator withdrew his allegation that Stewart had failed to reasonably communicate with the client.

{¶ 5} The stipulations and Stewart's testimony demonstrate that the delays in the client's divorce proceedings were caused by Stewart's and the divorcing parties' relocation, as well as the wife's multiple pregnancies during the pendency

of the action and the resultant need for genetic testing after the births to determine parentage. Because relator did not present any evidence contradicting Stewart's testimony, the board recommends that we dismiss Count One of relator's complaint. We adopt the board's findings of fact and dismiss this count.

**Count Two**

{¶ 6} The second count of relator's complaint arises from Stewart's representation of Brian and Lisa Heaton for damages arising from a Kroger pharmacy error that caused their infant son to receive an overdose of a prescription medication. The Heatons believed that their claim was worth $250,000, and when their first attorney valued their claim at no more than $20,000 to $30,000, they terminated his representation and retained Stewart. Stewart did not evaluate their claims, but filed a civil suit against Kroger in September 2002.

{¶ 7} Knowing that he would need a medical expert to establish causation, Stewart discussed the Heatons' claim with one of the child's treating physicians. The doctor reported that the pharmacist's improper dosage instructions proximately caused the child to have an elevated enzyme level in blood tests. Because the elevation was minimal, the doctor explained that it could not have caused permanent injury. Nonetheless, medical protocol required reporting of the error and testing for possible adverse effects. The doctor stated that the damages were limited to the numerous needle pricks necessary to perform the blood tests and the inconvenience of having the tests done. He required a $2,500 retainer for his expert testimony. The Heatons did not pay this retainer.

{¶ 8} Stewart failed to respond to Kroger's requests for discovery, despite the fact that Kroger sought and obtained an order to compel discovery, and failed to comply with a pretrial order to furnish proof of causation. On February 23, 2005, with Kroger's motion for summary judgment pending, Stewart voluntarily dismissed the case. He refiled the case on February 22, 2006, but again failed to

furnish requested discovery even after the court granted Kroger's motion to compel.

{¶ 9} At this time, Mr. and Mrs. Heaton had separated and were in the process of divorcing. Kroger's counsel made a one-time offer to settle the case for $5,000. The board found that at that time, Stewart was communicating only with Mr. Heaton and that he failed to advise Mrs. Heaton, either orally or in writing, of the settlement offer or to obtain her consent to the settlement. This finding, however, is inconsistent with (1) Stewart's uncontroverted testimony that he did obtain Mrs. Heaton's consent to the settlement, (2) Mr. Heaton's uncontroverted testimony that Stewart communicated the offer to him and Mrs. Heaton, that they were both fully aware of the settlement offer, and that the settlement offer was discussed with their respective counsel in their divorce proceedings, and (3) the board's recommendation that we dismiss alleged violations of Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter) and 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client) with respect to this count. Therefore, we reject this finding.

{¶ 10} On August 14, 2007, Stewart advised Kroger's counsel that his clients had accepted the settlement offer. He waited almost one year before responding to counsel's request for information regarding the apportionment of the settlement. Because Stewart had taken no action to obtain probate court approval of the minor's settlement, Kroger's counsel prepared and filed the necessary documents in April 2008. Stewart then failed to appear at the probate court hearing. He did, however, submit an entry of dismissal with prejudice in the civil action before the probate court had approved the settlement.

{¶ 11} The board found that Kroger's counsel mailed separate checks for Stewart's fee and the minor's portion of the settlement in October 2008 and that Stewart cashed his check. The board also found that he made no effort to

4

distribute the minor's portion of the settlement or to deposit it into his client trust account, having apparently lost or mislaid the check. In August 2009, Mrs. Heaton called Kroger's counsel to inquire about the status of the settlement. Kroger's counsel then reissued the check and, with consent of the probate court, deposited it into a trust account for the minor.

{¶ 12} Relator made numerous attempts to communicate with Stewart regarding Mrs. Heaton's grievance. His only response was one voice-mail message promising to send a response, which was never provided.

{¶ 13} Based upon these facts, the board found that Stewart violated DR 6-101(A)(1) and Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), DR 6-101(A)(3) and Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), and Prof.Cond.R. 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property), 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive), and 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation). Because Mrs. Heaton did not testify and because the nature and extent of Stewart's communications are not clear from the record, the board recommends that we dismiss the alleged violations of Prof.Cond.R. 1.4(a)(3) and (4) with respect to this count. We adopt the board's findings of fact and misconduct, except with respect to Mrs. Heaton's knowledge of the settlement, and hereby dismiss the alleged violations of Prof.Cond.R. 1.4(a)(3) and (4) with respect to this count.

<b>Count Three</b>

{¶ 14} In August 2008, Robert Johnston hired Stewart to file a mechanic's lien on behalf of his company, National Management Finishes, L.L.C. Stewart filed the lien on October 28, 2008.

**{¶ 15}** In February 2009, at Johnston's request, Stewart filed a complaint to foreclose on the lien. The defendant filed an answer, counterclaim, and demands for discovery. Although Stewart informally requested an extension of time to respond, he did not submit a response to the discovery demands. The defendant then moved for summary judgment. Stewart obtained an extension of time to respond to the motion, but once again failed to file a response. The court granted summary judgment and awarded a $43,000 judgment against the client's company on the defendant's counterclaim.

**{¶ 16}** Johnston testified that after he learned of the judgment from a third party, he asked Stewart to return his case file, but never received it. In addition, Stewart stipulated that his professional-liability insurance terminated in April 2009 and that he failed to advise Johnston that he no longer had coverage.

**{¶ 17}** The board found that Stewart violated Prof.Cond.R. 1.1, 1.3, 1.4(a)(3), 1.4(c) (requiring a lawyer **to** inform the client if the lawyer does not maintain professional liability insurance), and 1.16(d) (requiring a lawyer withdrawing from representation to take steps reasonably practicable to protect a client's interest). We adopt these findings of fact and misconduct.

### Count Four

**{¶ 18}** The parties stipulated and the board found that in July 2009, Victor Neubert hired Stewart to represent him and his son with regard to injuries that the son had suffered in a dirt-bike accident earlier that month. Stewart met with the Neuberts in August 2009, interviewed the son in early 2010, and promised to provide Neubert with an update. Stewart testifie**d** that he wrote a letter to the owners of the land where the accident had occurred but did not follow up when they failed to respond. Although relator's complaint alleges that Neubert called Stewart no fewer than 20 times and that his calls were not returned, Neubert was not subpoenaed and did not testify at the panel hearing.

{¶ 19} Stewart did not respond to any of relator's communications regarding the Neubert grievance. He did, however, testify that he returned some of Neubert's calls and that he knew that "there weren't 20 calls without me responding to them." He also admitted that he did not carry professional-liability insurance from April 2009 until September 2011 and that he had failed to advise his clients, including Neubert, of that fact.

{¶ 20} With respect to this count, the board found that Stewart violated Prof.Cond.R. 1.3, 1.4(c) and 8.1(b). Citing the absence of Neubert's testimony, however, the board recommends that we dismiss the alleged violations of Prof.Cond.R. 1.1 and 1.4(a)(3). We adopt these findings of fact and misconduct and hereby dismiss the alleged violations of Prof.Cond.R. 1.1 and 1.4(a)(3) with respect to this count.

### Count Five

{¶ 21} In August 2010, Patricia Chase retained Stewart and paid him $640 to draft and file a consent order granting her shared custody of her two children. On March 1, 2011, Stewart submitted a consent judgment and shared-parenting plan to the domestic relations court. The court approved the shared-parenting plan but instructed Stewart to modify certain aspects of the order and resubmit it. Stewart never submitted a modified order, and at the time of the panel hearing, the matter remained unresolved.

{¶ 22} In August 2011, relator sent Stewart a letter of inquiry asking him to respond to Chase's grievance. At some point, Stewart left a voice-mail message for relator stating that he had moved and that there had been a delay in the forwarding of his mail, and asking if it was too late to submit a written response to the grievance. He did not, however, submit a response.

{¶ 23} The board found that Stewart violated Prof.Cond.R. 1.1, 1.3, 1.4(a)(3), and 8.1(b) but recommends that we dismiss an alleged violation of Prof.Cond.R. 8.4(d). We adopt the board's findings of fact and misconduct with

respect to Count Five and hereby dismiss the alleged violation of Prof.Cond.R. 8.4(d).

**Sanction**

{¶ 24} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 25} As aggravating factors, the board found that Stewart has engaged in a pattern of misconduct involving multiple offenses, failed to cooperate in the disciplinary process in three of the four counts in which we have found misconduct, and failed to acknowledge the wrongful nature of his conduct. *See* BCGD Proc.Reg. 10(B)(1)(c), (d), (e), and (g). In addition, the board found that Stewart has attempted to downplay the gravity of his misconduct, claiming that his clients lost nothing as a result of his neglect—(1) the Heatons eventually received their portion of the settlement funds, (2) Johnston lost nothing because the $43,000 judgment in favor of the defendant on its counterclaim is not against Johnston personally, but against his insolvent company, and (3) Neubert obtained new counsel and was able to pursue his son's personal-injury claim. He also maintains that the delays in Chase's case were not caused by his inaction, but were the result of her ex-husband's failure to cooperate. For these reasons, the board found that Stewart does not appreciate the true nature of his professional responsibility to his clients. Moreover, the board found that Stewart had demonstrated an unwillingness to obey court orders in Counts Two and Five and failed to obey the prehearing orders of the panel chair, requiring the exchange of

exhibits and the timely exchange and filing of witness and exhibit lists in advance of the hearing.

{¶ 26} As mitigating factors, the board found that Stewart did not have a prior disciplinary record and that there was no evidence of a dishonest or selfish motive. *See* BCGD Proc.Reg. 10(B)(2)(a) and (b). The board noted that Stewart claimed that he and his wife were divorcing when he neglected Neubert's case and that his father's illness and death distracted him during the pendency of the Chase matter, but nonetheless it found that the aggravating factors outweighed the mitigating factors present in this case.

{¶ 27} Relator noted that we have indefinitely suspended lawyers who have engaged in a pattern of neglect and failed to cooperate in the resulting disciplinary investigation. *See, e.g.*, *Cleveland Bar Assn. v. Davis*, 121 Ohio St.3d 337, 2009-Ohio-764, 904 N.E.2d 517. However, relator recommends that Stewart be suspended from the practice of law for two years with one year stayed on the conditions that he immediately submit to an evaluation by the Ohio Lawyers Assistance Program ("OLAP"), enter into an OLAP contract, comply with OLAP's treatment recommendations, and serve a one-year period of monitored probation in accordance with Gov.Bar R. V(9).

{¶ 28} The board believed that Stewart's conduct falls somewhere between the conduct of the attorneys in *Toledo Bar Assn. v. Gregory*, 132 Ohio St.3d 110, 2012-Ohio-2365, 969 N.E.2d 1182 (imposing a six-month stayed suspension on an attorney who failed to hold property of clients in an interest-bearing client trust account separate from the lawyer's own property and failed to maintain required records of client funds held by the lawyer), and *Toledo Bar Assn. v. Woodley*, 132 Ohio St.3d 120, 2012-Ohio-2458, 969 N.E.2d 1192 (imposing an indefinite suspension on an attorney who failed to provide competent representation, neglected several client matters, engaged in the practice of law while under a registration suspension, and failed to cooperate in the

ensuing disciplinary investigation). The board recommends that we suspend Stewart from the practice of law for a period of two years, but stay the second year of that suspension on the conditions that he engage in no further misconduct, complete six hours of continuing legal education ("CLE") in law-office management and practice by a sole practitioner in addition to the requirements of Gov.Bar R. X, and serve one year of monitored probation in accordance with Gov.Bar R. V(9).[2] No objections have been filed.

{¶ 29} Having considered Stewart's misconduct and the aggravating and mitigating factors present, as well as the sanctions we have imposed for comparable misconduct, we agree that a two-year suspension, with the second year stayed on conditions, is the appropriate sanction in this case.

{¶ 30} Accordingly, we suspend Stewart from the practice of law for a period of two years but stay the second year of that suspension on the conditions that he engage in no further misconduct, complete six hours of CLE in law-office management and practice by a sole practitioner in addition to the requirements of Gov.Bar R. X, and that upon reinstatement, he serve one year of monitored probation in accordance with Gov.Bar R. V(9). Costs are taxed to Stewart.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Paul D. Giha, James P. Silk Jr., and Michael A. Bonfiglio, Bar Counsel, for relator.

John C. Stewart, pro se.

_____

2. Noting that the record contains no evidence suggesting that Stewart suffers from any chemical dependency or mental disability, the board rejected relator's recommendation that Stewart be required to submit to an OLAP evaluation.