[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Turner,* Slip Opinion No. 2018-Ohio-4202.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4202

DISCIPLINARY COUNSEL *v.* TURNER.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Turner,* Slip Opinion No. 2018-Ohio-4202.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including improper use of client trust account, engaging in sexual activity with a client, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Prior discipline—Two-year suspension with six months stayed on condition that respondent commit no further misconduct—Multiple conditions for reinstatement—Two years of monitored probation upon reinstatement.*

(No. 2018-0540—Submitted May 22, 2018—Decided October 18, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2016-067.

_____

**Per Curiam.**

{¶ 1} Respondent, Trent Reynard Turner, of Columbus, Ohio, Attorney Registration No. 0064524, was admitted to the practice of law in Ohio in 1995. In

2011, we suspended his license to practice law for one month based on his failure to register for the 2011-2013 biennium.

{¶ 2} In 2016, relator, disciplinary counsel, charged Turner with professional misconduct for neglecting two client matters, engaging in a sexual relationship with a client, and misusing his client trust account. The parties entered into stipulations of fact and misconduct but ultimately could not agree on a sanction. After a hearing, the Board of Professional Conduct found that Turner committed the charged misconduct and recommended that we suspend him for two years, with six months stayed, and impose several conditions on his reinstatement. Neither party has objected to the board's report and recommendation.

{¶ 3} For the reasons explained below, we adopt the board's findings of misconduct and recommended sanction.

**Misconduct**

*Count one: the Jane Doe matters*

{¶ 4} In January 2015, Jane Doe paid Turner a flat fee of $1,000 to file a motion for judicial release on behalf of Lamont Howard.[1] In early March 2015, Doe called Turner three times inquiring about the status of the matter, but he failed to answer her phone calls. Instead, he sent her a text message stating that he was working on the motion. In April 2015, Doe attempted to contact Turner by telephone and text message, but he failed to answer her calls or respond to her messages—although at one point, he falsely told her that he had almost completed the motion. In May 2015, after six more unreturned phone calls, Doe left Turner a voicemail requesting a refund of the $1,000. Later that same day, Turner filed a motion for judicial release and supporting memorandum. Except for the signature block and contact information, Turner submitted the exact same documents that Howard's previous counsel had filed in 2013—which the court had already denied.

---

[1] Upon the joint request of the parties, the board restricted public access to Doe's identity to protect her individual privacy rights and interests. *See* Sup.R. 45(E).

**{¶ 5}**   Earlier in 2015, Doe had asked Turner to separately represent her in a pending civil matter in small-claims court.  On May 19, 2015, Turner appeared on Doe's behalf at a hearing on the civil matter, and she paid him $300.  Later that evening, Turner invited Doe to his home, and they had consensual sex.  Over the next week, Turner sent Doe over 100 text messages, many of which were sexual in nature.  By the end of the month, however, Turner and Doe began arguing and stopped communicating for a couple weeks.

**{¶ 6}**   On June 11, 2015, the court entered a decision in Doe's civil matter, but Turner failed to advise her of the ruling.  Doe thereafter made repeated attempts to contact Turner to inquire about both Howard's and her cases, but Turner failed to respond.  On June 24, 2015, Doe sent Turner a text message seeking information about the matters.  In response, Turner stated that Doe was "being so impatient" and that he would let her know when he had new information to share.  Turner again failed to advise Doe that the court had already issued a decision in her case.

**{¶ 7}**   On July 9, 2015, Doe confronted Turner about the fact that he had submitted the same judicial-release motion filed by Howard's former counsel and that he had failed to keep her updated about her civil case.  Doe also requested a refund of the $1,000.  In response, Turner falsely stated that he had a "meeting" scheduled with the judge in Howard's matter, and Turner offered to refund $500 to Doe.  Turner, however, never refunded any money to Doe.  In fact, he never communicated with her again and failed to inform both her and Howard when the court denied the motion for judicial release.

**{¶ 8}**   Based on this conduct, the parties stipulated and the board found that Turner violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) and (4) (requiring a lawyer to keep the client reasonably informed about the status of a matter and to comply as soon as practicable with reasonable requests for information from the client), 1.8(j) (prohibiting a lawyer from soliciting or engaging in sexual activity with a client

unless a consensual sexual relationship existed prior to the client-lawyer relationship), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The board also concluded that by copying the motion for judicial release and attempting to mislead his client into believing it was his own work, Turner engaged in dishonest conduct that was sufficiently egregious to warrant a separate violation of 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21. We agree with the board's findings of misconduct.

*Count two: client-trust-account violations*

{¶ 9} Turner stipulated that he not only failed to deposit Doe's $1,000 fee into his client trust account, but he also used his client trust account as a personal account, which resulted in the commingling of client and personal funds. Specifically, Turner did not separately maintain an operating or personal bank account. Therefore, he deposited client, business, and personal funds into his client trust account, and he routinely withdrew funds from the account to pay personal and business expenses. Turner also failed to maintain records for his client trust account and to perform reconciliations of the funds in the account.

{¶ 10} Based on this conduct, the board found that Turner violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property), 1.15(a)(2) through (5) (requiring a lawyer to maintain certain records regarding funds held in a client trust account and to perform and retain a monthly reconciliation of the account), 1.15(b) (permitting a lawyer to deposit his or her own funds in a client trust account for the sole purpose of paying or obtaining a waiver of bank service charges), and 1.15(c) (requiring a lawyer to deposit legal fees and expenses that

4

have been paid in advance into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred). We agree with the board's findings of misconduct.

**Sanction**

{¶ 11} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

*Aggravating and mitigating factors*

{¶ 12} As aggravating factors, the board found that Turner had a dishonest and selfish motive, he committed multiple offenses, and his misconduct harmed his clients. *See* Gov.Bar. R. V(13)(B)(2), (4), and (8). In addition, Turner failed to make restitution to Doe. *See* Gov.Bar R. V(13)(B)(9).

{¶ 13} In mitigation, the board first found that—as stipulated by the parties—Turner has no prior discipline. But as noted above, we suspended Turner for one month in 2011 for failing to register as an attorney. "Although attorney-registration suspensions may not weigh heavily against an attorney when the prior discipline consists of only a brief registration suspension, '[a]n attorney's suspension for failure to comply with attorney-registration requirements is prior discipline and therefore is an aggravating factor.' " *Toledo Bar Assn. v. Crosser*, 147 Ohio St.3d 499, 2016-Ohio-8257, 67 N.E.3d 789, ¶ 8, quoting *Disciplinary Counsel v. Anthony*, 138 Ohio St.3d 129, 2013-Ohio-5502, 4 N.E.3d 1006, ¶ 11.

{¶ 14} The board's remaining two mitigating factors, however, are applicable: Turner had a cooperative attitude toward the disciplinary proceedings, and he submitted positive character evidence. *See* Gov.Bar R. V(13)(C)(4) and (5).

{¶ 15} The board also noted that Turner has a history of abusing alcohol, that alcohol contributed to his misconduct, particularly in the Doe matters, and that Turner has attempted to engage with the Ohio Lawyers Assistance Program

("OLAP"). Turner, however, has not yet completed an approved treatment program. Indeed, he testified that he had failed to attend 90 consecutive days of Alcoholics-Anonymous ("AA") meetings as a condition to entering into an OLAP contract. Therefore, the board properly determined that it could not give any mitigating weight for a substance-abuse disorder. *See* Gov.Bar R. V(13)(C)(7). The board concluded—and we agree—that Turner's alcohol problem must be addressed before he is reinstated to the practice of law.

*Applicable precedent*

{¶ 16} The board recommends that we suspend Turner from the practice of law for two years, with six months stayed, and impose conditions on his reinstatement. To support its recommendation, the board relies on *Akron Bar Assn. v. Bednarski*, 148 Ohio St.3d 615, 2017-Ohio-522, 71 N.E.3d 1093.

{¶ 17} In *Bednarski*, an attorney neglected a client's criminal appeal, resulting in dismissal of the appeal and the client commencing his sentence earlier than expected. The attorney also failed to maintain a client trust account and did not properly notify clients that she lacked malpractice insurance. Aggravating factors included her failure to cooperate in the disciplinary process and her failure to make restitution to her client. In mitigation, the attorney had no prior discipline and lacked a dishonest or selfish motive. Based in part on the attorney's untreated alcohol problem and her inability to sufficiently handle the financial and management aspects of her law practice, we suspended her for two years, with the final six months stayed on several conditions, including that she undergo an OLAP assessment, make restitution to her former client, and complete continuing-legal-education ("CLE") hours on law-office management. *See id.* at ¶ 18-21.

{¶ 18} We agree with the board that the nature of Turner's misconduct and the balance of aggravating and mitigating factors are comparable to the circumstances in *Bednarski*. And similar to the sanction in *Bednarski*, we must

impose conditions on Turner's reinstatement that are tailored to address the causes of his misconduct.

{¶ 19} The board's recommended sanction is also consistent with our precedent involving attorneys who engaged in sexual activity with clients. "A lawyer's sexual involvement with a client has warranted a range of disciplinary measures depending on the relative impropriety of the situation * * *." *Cleveland Bar Assn. v. Kodish*, 110 Ohio St.3d 162, 2006-Ohio-4090, 852 N.E.2d 160, ¶ 66.

> We have publicly reprimanded attorneys who have commenced consensual sexual relationships with their clients that have not compromised the clients' interests. *See, e.g.*, *Disciplinary Counsel v. Engler*, 110 Ohio St.3d 138, 2006-Ohio-3824, 851 N.E.2d 502 (publicly reprimanding an attorney who had two consensual sexual encounters with a client while representing her in a divorce). On the other end of the spectrum, we have disbarred an attorney who solicited sex from clients in exchange for a reduced legal fee, made inappropriate sexual comments to clients, touched them in a sexual manner, exposed himself to a client, and lied repeatedly during the disciplinary process. *Disciplinary Counsel v. Sturgeon*, 110 Ohio St.3d 285, 2006-Ohio-5708, 855 N.E.2d 1221.
>
> In between those two extremes, we typically impose term suspensions with all or part of the suspension stayed, depending on the severity of the misconduct and the applicable aggravating and mitigating factors.

*Cleveland Metro. Bar Assn. v. Paris*, 148 Ohio St.3d 55, 2016-Ohio-5581, 68 N.E.3d 775, ¶ 18-19. *See also Disciplinary Counsel v. Hines*, 133 Ohio St.3d 166, 2012-Ohio-3929, 977 N.E.2d 575 (suspending an attorney for six months, stayed conditionally, for engaging in a sexual relationship with a vulnerable domestic-relations client and, upon their breakup, leaving her without legal assistance at a critical juncture in her case); *Cleveland Metro. Bar Assn. v. Sleibi*, 144 Ohio St.3d 257, 2015-Ohio-2724, 42 N.E.3d 699 (suspending an attorney for two years, with six months conditionally stayed, for engaging in sexual activity with four clients and sending sexually explicit, lewd messages to three of the clients).

{¶ 20} Here, Turner engaged in a consensual but improper sexual encounter with Doe and committed other serious misconduct, including plagiarizing a court filing. But considering his cooperative approach to the disciplinary investigation and the reinstatement conditions suggested by the board, we conclude that the board's recommended sanction adequately protects the public and gives Turner the opportunity to practice law again if he pursues treatment and avoids additional misconduct.

**Conclusion**

{¶ 21} For the reasons explained above, we adopt the board's recommended sanction. Trent Reynard Turner is hereby suspended from the practice of law for two years, with the final six months stayed on the condition that he commit no further misconduct. If Turner fails to comply with the condition of the stay, the stay will be lifted and he will serve the full two-year suspension. As conditions for reinstatement, Turner must demonstrate that he has (1) attended 90 consecutive days of AA meetings to the satisfaction of OLAP, (2) entered into an OLAP contract and complied with all contract terms and treatment recommendations, (3) completed 12 hours of CLE related to law-office management, in addition to the requirements in Gov.Bar R. X, and (4) made restitution in the amount of $1,000 to Jane Doe or reimbursed the Lawyer's Fund

for Client Protection for any amount awarded to Doe. Upon reinstatement, Turner must submit to a two-year period of monitored probation in accordance with Gov.Bar R. V(21). Costs are taxed to Turner.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, FRENCH, FISCHER, DEWINE, and DEGENARO, JJ., concur.

KENNEDY, J., concurs in judgment only.

_____

Scott J. Drexel, Disciplinary Counsel, Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, and Jennifer Bondurant, Assistant Disciplinary Counsel, for relator.

Richard Chambers, for respondent.

_____