[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as
*Dayton Bar Assn. v. Sullivan,* Slip Opinion No. 2020-Ohio-124.]

NOTICE

This slip opinion is subject to formal revision before it is published in an
advance sheet of the Ohio Official Reports.  Readers are requested to
promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65
South Front Street, Columbus, Ohio 43215, of any typographical or other
formal errors in the opinion, in order that corrections may be made before
the opinion is published.

SLIP OPINION NO. 2020-OHIO-124

DAYTON BAR ASSOCIATION *v.* SULLIVAN.

[Until this opinion appears in the Ohio Official Reports advance sheets, it
may be cited as *Dayton Bar Assn. v. Sullivan,* Slip Opinion No.
2020-Ohio-124.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct,
including engaging in conduct involving dishonesty, fraud, deceit, or
misrepresentation—Two-year suspension, with the second year stayed on
conditions.*

(No. 2018-1765—Submitted May 8, 2019—Decided January 21, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct
of the Supreme Court, No. 2018-007.

_____

**Per Curiam.**

{¶ 1} Respondent, Anthony William Sullivan, of Dayton, Ohio, Attorney
Registration No. 0062416, was admitted to the practice of law in Ohio in 1993.

**{¶ 2}** In a four-count complaint certified to the Board of Professional Conduct on February 1, 2018, relator, Dayton Bar Association, charged Sullivan with multiple professional-conduct violations arising out of his representation of four separate clients. The complaint alleged that Sullivan (1) failed to act diligently and promptly in representing three of those clients, (2) neglected to inform three of those clients that he did not carry professional-liability insurance, (3) engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation with three of those clients, and (4) refused to cooperate with relator's disciplinary investigation into the grievances filed by all four clients.

**{¶ 3}** A hearing was held before a panel of the board on September 21, 2018. Sullivan and two grievants testified, and the parties agreed to the admission of 34 exhibits. Although Sullivan did not cooperate with relator during the investigation of the four grievances, he admitted to every allegation, with some qualifications and explanations, in either his answer to the complaint or his testimony before the panel.

**{¶ 4}** Following the hearing, the panel requested that Sullivan and relator submit a stipulation as to whether Sullivan owed a refund to one of his former clients who had filed one of the grievances, and if so, the amount of that refund. The parties subsequently agreed that Sullivan owed that former client $1,000. Thereafter, the panel issued a report finding that Sullivan had committed all but two of the instances of misconduct that had been alleged and recommending that he be suspended from the practice of law for two years, with the second year of the suspension stayed on conditions. The board adopted the panel's findings and recommended sanction.

**{¶ 5}** No objections have been filed. Having reviewed the record, we adopt the board's findings of misconduct and agree that a two-year suspension, with one year conditionally stayed, is the appropriate sanction.

**Misconduct**

*Count One—the Horwath Matter*

{¶ 6} In 2013, Sullivan represented Tamala Horwath in a landlord-tenant dispute. Sullivan filed a successful eviction action against Horwath's tenant and obtained a judgment requiring the tenant to pay Horwath $5,259.66 in past due rent and late fees. Thereafter, Horwath engaged Sullivan to collect the $5,259.66. On November 18, 2014, Horwath provided Sullivan the debtor's place of employment for purposes of commencing a garnishment action and on January 18, 2015, Horwath paid Sullivan the $125 filing fee for that action.

{¶ 7} Horwath contacted Sullivan's office and left a number of messages for him over the next year regarding the status of the collection action. On a few occasions, Horwath spoke to Sullivan's assistant, who, according to Horwath, would give "vague information" about the collection action. When Horwath finally spoke with Sullivan after nearly a year of trying, Sullivan falsely told her the collection paperwork had been filed.

{¶ 8} Horwath filed a grievance with relator against Sullivan in December 2015. Relator sent Sullivan two letters by certified mail requesting that Sullivan schedule an interview and that he produce certain documents, including his fee agreement with Horwath, her client file, and proof that Sullivan carried professional-liability insurance for the time period during which he represented Horwath. Sullivan failed to respond to relator's requests.

{¶ 9} During the hearing, Sullivan testified that his professional-liability insurance had expired on June 20, 2014, and that he had failed to obtain a signed acknowledgement from Horwath notifying her of that fact. Additionally, by the date of the hearing, despite Sullivan's failure to file the collection action, he had not refunded Horwath's filing fee.

{¶ 10} Based on the evidence and Sullivan's admissions, the board found that Sullivan had violated Prof.Cond.R. 1.3 (requiring a lawyer to act with

reasonable diligence in representing a client), 1.4(c) (requiring a lawyer to inform a client if the lawyer does not maintain professional-liability insurance and to obtain a signed acknowledgement of that notice from the client), 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

*Count Two—the Kolaczkowski Matter*

{¶ 11} Jeffrey Kolaczkowski retained Sullivan in April 2011 to represent him in his divorce. In the summer of 2013, after obtaining a divorce decree, Kolaczkowski consulted with Sullivan about modifying the divorce decree as it pertained to his child-support obligations. Kolaczkowski met with Sullivan on two occasions to complete the necessary financial forms for the modification request, but Sullivan never filed the motion.

{¶ 12} In August 2013, Kolaczkowski's ex-wife filed a motion asking Kolaczkowski to show cause as to why he had failed to meet his child-support obligations. The matter was eventually assigned a hearing date of August 11, 2014.

{¶ 13} Sullivan failed to inform Kolaczkowski of the hearing. Kolaczkowski, however, discovered the hearing notice in July 2014 while conducting a search of the trial court's online docket. He notified Sullivan that he could not attend the hearing due to a preplanned vacation. Sullivan assured Kolaczkowski that a continuance would be requested and that Kolaczkowski should not worry about attending the hearing. With that assurance, Kolaczkowski went on vacation. On July 30, 2014, when Kolaczkowski asked for a case update, Sullivan falsely told Kolaczkowski that he had filed the motion requesting a continuance but that he had not yet heard back from the court. At that point, Kolaczkowski could have returned from vacation for the August 11 hearing if necessary. Sullivan once again told him not to worry about attending the hearing. Sullivan finally filed the

motion five days before the hearing, but the trial court denied the request the next day. Sullivan did not tell Kolaczkowski about the court's decision and consequently, Kolaczkowski failed to appear. The hearing proceeded in Kolaczkowski's absence, and the trial court later found Kolaczkowski in contempt, issued a warrant for his arrest, and ordered him to pay his ex-wife's attorney fees.

{¶ 14} When Kolaczkowski discovered that the hearing had not been continued, he confronted Sullivan and demanded an explanation. Sullivan blamed his staff for neglecting to inform Kolaczkowski that the hearing would proceed to take place as scheduled.

{¶ 15} Kolaczkowski filed a grievance against Sullivan in late October 2015. Relator sent Sullivan a certified letter on December 29, 2015, requesting that Sullivan schedule an interview and that he produce certain documents concerning his representation of Kolaczkowski, including proof of professional-liability insurance. After Sullivan failed to respond, relator called him on January 29, 2016. Sullivan explained he was recovering from surgery, and relator granted him an extension for his response. But Sullivan did not respond by the extended deadline. Relator subsequently contacted Sullivan five days after the deadline, and Sullivan again promised to send the requested information. But once again, Sullivan failed to do so.

{¶ 16} In March, when Sullivan finally attempted to comply with relator's requests, Sullivan provided relator with an incomplete client file and an insurance-declaration page showing a policy that had expired on June 20, 2014. At his hearing, Sullivan testified that he never informed Kolaczkowski that his professional-liability insurance had terminated on June 20, 2014.

{¶ 17} Against this backdrop, Sullivan admitted, and the board found, violations of Prof.Cond.R. 1.3, 1.4(c), 8.1(b), and 8.4(c).

*Count Three—the Topps Matter*

{¶ 18} Sullivan represented Lisa Topps in a criminal case in January 2015. Topps, who was convicted of three felonies, filed a grievance alleging that Sullivan had failed to properly defend her against the charges that she faced.

{¶ 19} During the investigation, Sullivan failed to respond to relator's initial request for certain documents regarding Sullivan's representation of Topps and the dates and times of Sullivan's availability so that an interview could be scheduled. Relator sent a second request and Sullivan submitted what he represented to be Topps's entire client file. Sullivan, however, failed to provide dates or times when he could be interviewed. Relator contacted Sullivan a third time to set up an interview. Sullivan responded via e-mail, stating that he would set up an interview soon. Sullivan, however, did not contact relator to set up the promised interview. Relator sent another e-mail imposing a two-week deadline for Sullivan to schedule an interview. Sullivan never responded to this e-mail.

{¶ 20} Relator ultimately determined that there was insufficient cause to proceed on Topps's grievance. However, because Sullivan failed to fully cooperate with the investigation, relator charged him with a violation of Prof.Cond.R. 8.1(b).

{¶ 21} Sullivan admitted to the charged violation during the hearing and the board found sufficient evidence that Sullivan had violated Prof.Cond.R. 8.1(b).

*Count Four—the Nason Matter*

{¶ 22} Andrew Nason paid Sullivan a $2,000 retainer in April 2016 to defend him against three felony charges. Nason had been jailed since December 2015 and was being held on a $250,000 bond. Nason's former counsel had filed two separate motions to suppress, which were still pending when Sullivan was hired. The trial court denied the motions to suppress in August 2016 and scheduled Nason's case for trial. Nason, however, discharged Sullivan prior to trial.

{¶ 23} Nason filed a grievance against Sullivan in July 2016. Nason alleged that Sullivan did nothing to resolve his case, refused to respond to requests for

information from Nason and his family members, and visited him in prison only twice during the eight-month period of time in which Sullivan represented Nason. Nason also testified that Sullivan indicated that he would be able to get Nason's $250,000 bond reduced. According to Nason, Sullivan said that he had filed a motion with the court requesting a reduction of Nason's bond. But no such motion was ever filed.

{¶ 24} During the investigation into Nason's grievance, relator sent Sullivan a certified letter requesting that Sullivan provide relator with possible dates and times for an interview and with certain documents pertaining to his representation of Nason, including proof of professional-liability insurance. Relator requested a response by October 26, 2016. Sullivan, however, failed to respond in any fashion.

{¶ 25} The complaint in this count charged Sullivan with violations of Prof.Cond.R. 1.3, 1.4(c), 8.1(b), and 8.4(c), as well as violations of Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of the matter) and 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with a client's reasonable requests for information). During his disciplinary hearing, with some clarifications, Sullivan admitted that he had committed each of the charged violations.

{¶ 26} Despite Sullivan's admissions, the panel found insufficient evidence establishing that Sullivan had failed to keep Nason reasonably informed or that Sullivan had neglected to promptly respond to reasonable requests for information. Therefore, the panel unanimously dismissed the alleged violations of Prof.Cond.R. 1.4(a)(3) and (4).

{¶ 27} The panel found and the board agreed that Sullivan's conduct violated Prof.Cond.R. 1.3, 1.4(c), 8.1(b), and 8.4(c).

**Sanction**

{¶ 28} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties violated, the relevant aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

*Aggravating and mitigating factors*

{¶ 29} The board found the following aggravating factors: (1) a dishonest or selfish motive, (2) a pattern of misconduct, (3) multiple offenses, (4) a failure to cooperate in the disciplinary process prior to the filing of the complaint, and (5) a failure to make restitution. *See* Gov.Bar R. V(13)(B)(2), (3), (4), (5), and (9).

{¶ 30} In mitigation, the board found that Sullivan had no prior disciplinary record and that he cooperated with the disciplinary process after relator had filed the complaint. *See* Gov.Bar R. V(13)(C)(1) and (4).

*Recommended sanction*

{¶ 31} The parties stipulated to a two-year suspension from the practice of law, with the second year stayed on the conditions that Sullivan submit to an evaluation with the Ohio Lawyers Assistance Program ("OLAP") and that he comply with any recommendations resulting from the evaluation. Although Sullivan denied having any disorder that may have contributed to his misconduct, the board was concerned that Sullivan had three close family members pass away within several months of each other. These series of events, coupled with Sullivan's lack of explanation for his pattern of neglect, which continued even after the hearing, led the board to agree that an OLAP assessment was appropriate.

{¶ 32} The board also determined that an actual suspension from the practice of law is necessary to protect the public. Accordingly, the board recommends that Sullivan be suspended for two years, with the second year of the suspension stayed on the conditions that he (1) engage in no further misconduct, (2) provide proof within 30 days of this court's decision that he has made restitution

8

of $125 to Horwath and $1,000 to Nason, (3) schedule an OLAP assessment within 30 days of this court's decision and comply with any recommendations resulting from the assessment, (4) in addition to the requirements of Gov.Bar R. X, complete 12 hours of continuing-legal education ("CLE") in law-office management and practice as a sole practitioner, (5) pay the costs of these proceedings, and (6) upon reinstatement, serve one year of monitored probation in accordance with Gov.Bar R. V(21).

{¶ 33} In support of this recommendation, the board cites three cases as comparable to Sullivan's case, *Cleveland Metro. Bar Assn. v. Gresley*, 127 Ohio St.3d 430, 2010-Ohio-6208, 940 N.E.2d 945, *Toledo Bar Assn. v. Stewart*, 135 Ohio St.3d 316, 2013-Ohio-795, 986 N.E.2d 947, and *Disciplinary Counsel v. Guinn*, 150 Ohio St.3d 92, 2016-Ohio-3351, 79 N.E.3d 512.

{¶ 34} In *Gresley*, we suspended the respondent for two years, with six months of the suspension stayed on conditions, for conduct that included accepting fees from several clients and then failing to perform agreed upon legal work and failing to cooperate in the ensuing disciplinary investigation of that conduct. The aggravating factors included acting with a selfish motive, engaging in a pattern of misconduct, causing harm to vulnerable clients, and failing to cooperate during the initial part of the investigation. Mitigating factors included having a clean disciplinary record, cooperating in the disciplinary proceeding once the complaint was filed, and having other sanctions imposed that were outside the disciplinary process.

{¶ 35} In *Stewart*, we suspended the respondent for two years, with the second year of the suspension stayed on conditions, for conduct that included accepting retainers from multiple clients and then failing to perform the agreed upon legal work, failing to inform clients about a lack of professional-liability insurance, and refusing to cooperate in the disciplinary process. Aggravating factors in *Stewart* included engaging in a pattern of misconduct, committing

multiple offenses, failing to cooperate in the disciplinary process, and failing to acknowledge the wrongful nature of the misconduct. Mitigating factors included having no prior discipline and lacking a selfish or dishonest motive.

{¶ 36} And in *Guinn*, we imposed a two-year suspension, fully stayed on conditions, for the respondent's misconduct, which included neglecting two client matters, misrepresenting the status of a client's case, and failing to inform clients about a lack of professional-liability insurance. Only one aggravating factor was present—i.e., engaging in a pattern of misconduct. Mitigating factors included having no prior discipline, lacking a selfish motive, making full and free disclosures to the board, and having a cooperative attitude toward the disciplinary proceedings.

*Disposition*

{¶ 37} We agree with the board that Sullivan's misconduct is comparable to the misconduct in the cited cases, particularly to the misconduct in *Stewart*. Similar to Stewart, Sullivan neglected several client matters, failed to inform clients that he lacked professional-liability insurance, and refused to cooperate in the ensuing disciplinary investigation until the complaint had been filed. Likewise, the balance of aggravating and mitigating factors here is analogous to those in *Stewart*.

{¶ 38} "We are ever mindful that the primary purpose of the disciplinary process is not to punish the offender but to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship." *Columbus Bar Assn. v. Kiesling*, 125 Ohio St.3d 36, 2010-Ohio-1555, 925 N.E.2d 970, ¶ 44, citing *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10. Sullivan engaged in significant misconduct yet was unable to explain his actions to the panel. Therefore, we agree with the board that an actual suspension is warranted here to protect the public. In light of Sullivan's eventual cooperation in the disciplinary process, the absence of prior discipline, his agreement to undergo an OLAP assessment, and the condition that he serve a one-year period of monitored probation, we agree that a two-year suspension, with the

second year stayed on conditions, is supported by the record and is reasonable and appropriate in this case.

## Conclusion

{¶ 39} Accordingly, we suspend Sullivan from the practice of law for two years, with the second year of the suspension stayed on the conditions that he (1) make restitution of $125 to Horwath and $1,000 to Nason within 30 days of this court's disciplinary order, (2) schedule an assessment with OLAP within 30 days of this court's disciplinary order and comply with any recommendations resulting from that assessment, (3) in addition to the requirements of Gov.Bar R. X, complete 12 hours of CLE in law-office management and practice as a sole practitioner, (4) refrain from further misconduct, and (5) complete a one-year period of monitored probation in accordance with Gov.Bar R. V(21) upon his reinstatement to the practice of law. If Sullivan fails to comply with any of these conditions, the stay will be lifted and he will serve the entire two-year suspension. Costs are taxed to Sullivan.

Judgment accordingly.

O'CONNOR, C.J., and FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

FISCHER, J., concurs, with an opinion joined by DONNELLY, J.

KENNEDY, J., concurs in part and dissents in part, with an opinion joined by DEWINE, J.

_____

**FISCHER, J., concurring.**

{¶ 40} I join the majority opinion in this case. I write separately, however, to respectfully disagree with the viewpoint proposed in the opinion concurring in part and dissenting in part, which concludes that the Supreme Court Rules for the Government of the Bar require this court to impose specific conditions on any term of monitored probation in an attorney-discipline case. Neither the Supreme Court

Rules for the Government of the Bar nor decades of this court's case law addressing attorney discipline supports such a requirement.

{¶ 41} This court has the sole duty to oversee the practice of law in this state under Article IV, Sections 2(B)(1)(g) and 5(B) of the Ohio Constitution. As the final arbiter of attorney discipline, this court determines the appropriate disciplinary sanction, if any, which may include a period of monitored probation. *See* Gov.Bar R. V(12)(A).

{¶ 42} If we decide to order an attorney to serve a period of monitored probation, we are by no means required, as the opinion concurring in part and dissenting in part contends, to attach specific conditions to the term of that probation. This court, under Gov.Bar R. V(12)(A)(4), may order an attorney to serve a period of probation with those conditions we deem appropriate. Similarly, Gov.Bar R. V(12)(I) allows a disciplinary-hearing panel to recommend a period of probation and requires the panel to "include in its report *any* conditions of probation." (Emphasis added.) The term "any" can mean "one, some, or all indiscriminately of whatever quantity" or "unmeasured or unlimited in amount, quantity, number, * * * or extent." *Webster's Third New International Dictionary* 97 (2002). And furthermore, Gov.Bar R. V(21) provides various general requirements for the term of monitored probation. As I have said before, the language of these rules indicates that this court may impose a term of probation *without* conditions. *See Disciplinary Counsel v. Halligan*, ___Ohio St.3d ___, 2019-Ohio-3748, ___ N.E.3d____, ¶ 33-36 (Fischer, J., concurring).

{¶ 43} Consistent with this court's unfettered constitutional authority over the practice of law, the Supreme Court Rules for the Government of the Bar were written to allow this court discretion in attorney-discipline cases. This discretion does not require this court to mandate specific conditions of monitored probation in those cases in which we decide to impose such a term.

{¶ 44} This court, in keeping with the Supreme Court Rules for the Government of the Bar, has ordered various types of monitored probation for disciplined attorneys, ranging from general terms of monitored probation to very specific terms of monitored probation.

{¶ 45} In numerous cases decided in this past decade, this court has ordered a general term of monitored probation without specific conditions for many disciplined attorneys. *See Disciplinary Counsel v. Blair*, 128 Ohio St.3d 384, 2011-Ohio-767, 944 N.E.2d 1161, ¶ 21, *reinstatement granted*, 131 Ohio St.3d 1229, 2012-Ohio-1590, 967 N.E.2d 212, ¶ 4; *Toledo Bar Assn. v. Miller*, 132 Ohio St.3d 63, 2012-Ohio-1880, 969 N.E.2d 239, ¶ 16; *Akron Bar Assn. v. DeLoach*, 143 Ohio St.3d 39, 2015-Ohio-494, 34 N.E.3d 88, ¶ 20; *Dayton Bar Assn. v. Washington*, 143 Ohio St.3d 248, 2015-Ohio-2449, 36 N.E.3d 167, ¶ 15; *Cleveland Metro. Bar Assn. v. Sleibi*, 144 Ohio St.3d 257, 2015-Ohio-2724, 42 N.E.3d 699, ¶ 31, *reinstatement granted*, 150 Ohio St.3d 1213, 2017-Ohio-919, 78 N.E.3d 889, ¶ 3-4; *Columbus Bar Assn. v. Balaloski*, 145 Ohio St.3d 121, 2016-Ohio-86, 47 N.E.3d 150, ¶ 8; *Disciplinary Counsel v. Williams*, 145 Ohio St.3d 308, 2016-Ohio-827, 49 N.E.3d 289, ¶ 26, *reinstatement granted*, 150 Ohio St.3d 1214, 2017-Ohio-920, 78 N.E.3d 890, ¶ 3-4; *Columbus Bar Assn. v. Reed*, 145 Ohio St.3d 464, 2016-Ohio-834, 50 N.E.3d 516, ¶ 15-16; *Mahoning Cty. Bar Assn. v. Hanni*, 145 Ohio St.3d 492, 2016-Ohio-1174, 50 N.E.3d 542, ¶ 17; *Disciplinary Counsel v. Jackson*, 146 Ohio St.3d 341, 2016-Ohio-1599, 56 N.E.3d 936, ¶ 9; *Disciplinary Counsel v. Bartels*, 151 Ohio St.3d 144, 2016-Ohio-3333, 87 N.E.3d 155, ¶ 16, *reinstatement granted*, 150 Ohio St.3d 1284, 2017-Ohio-4432, 82 N.E.3d 1171, ¶ 3-4; *Disciplinary Counsel v. Mahin*, 146 Ohio St.3d 312, 2016-Ohio-3336, 55 N.E.3d 1108, ¶ 7, *reinstatement granted*, 147 Ohio St.3d 1266, 2016-Ohio-7717, 66 N.E.3d 758, ¶ 3-4; *Disciplinary Counsel v. Guinn*, 150 Ohio St.3d 92, 2016-Ohio-3351, 79 N.E.3d 512, ¶ 17; *Columbus Bar Assn. v. Roseman*, 147 Ohio St.3d 317, 2016-Ohio-5085, 65 N.E.3d 713, ¶ 17; *Disciplinary Counsel v. Kendrick*, 147 Ohio St.3d

395, 2016-Ohio-5600, 66 N.E.3d 710, ¶ 15; *Cincinnati Bar Assn. v. Hauck*, 148 Ohio St.3d 203, 2016-Ohio-7826, 69 N.E.3d 719, ¶ 40-41; *Disciplinary Counsel v. Joltin*, 147 Ohio St.3d 490, 2016-Ohio-8168, 67 N.E.3d 780, ¶ 34; *Cleveland Metro. Bar Assn. v. King*, 148 Ohio St.3d 602, 2016-Ohio-8255, 71 N.E.3d 1082, ¶ 15; *Disciplinary Counsel v. Barbera*, 149 Ohio St.3d 505, 2017-Ohio-882, 75 N.E.3d 1248, ¶ 15; *Disciplinary Counsel v. Pickrel*, 151 Ohio St.3d 466, 2017-Ohio-6872, 90 N.E.3d 853, ¶ 17, *reinstatement granted*, 156 Ohio St.3d 1213, 2019-Ohio-32, 124 N.E.3d 847, ¶ 3-4; *Disciplinary Counsel v. Turner*, 154 Ohio St.3d 322, 2018-Ohio-4202, 114 N.E.3d 174, ¶ 21; *Wood Cty. Bar Assn. v. Driftmyer*, 155 Ohio St.3d 603, 2018-Ohio-5094, 122 N.E.3d 1262, ¶ 22.

**{¶ 46}** When necessary and practical, however, this court has also decided to order disciplined attorneys to serve a more specific term of monitored probation. *See, e.g.*, *Disciplinary Counsel v. Bennett*, 146 Ohio St.3d 237, 2016-Ohio-3045, 54 N.E.3d 1232, ¶ 19; *Disciplinary Counsel v. Quinn*, 144 Ohio St.3d 336, 2015-Ohio-3687, 43 N.E.3d 398, ¶ 15, *reinstatement granted,* 146 Ohio St.3d 1231, 2016-Ohio-2737, 52 N.E.3d 1195, ¶ 3-4; *Columbus Bar Assn. v. McCord*, 150 Ohio St.3d 81, 2016-Ohio-3298, 79 N.E.3d 503, ¶ 17.

**{¶ 47}** These cases illustrate that the longstanding practice of this court is to analyze each attorney-discipline case on its own basis and impose sanctions tailored to the particular facts of that case. Hence, any decision to the contrary—including one that would demand that every term of monitored probation include specific subject areas that the monitor must cover or specific conditions the attorney must comply with—would require us to overturn decades of precedent and scores of decisions by this court. *See, e.g.*, *Crawford Cty. Bar Assn. v. Nicholson*, 66 Ohio St.3d 585, 613 N.E.2d 1025 (1993). Stare decisis exists for a reason, and I cannot condone such a change in practice, especially without an accompanying change to the rules.

**{¶ 48}** Apart from the rules themselves and the 30 years of precedent from this court, there are other practical reasons for rejecting the view espoused in the opinion concurring in part and dissenting in part. The current practice ensures the protection of the public and aids the disciplined attorney, all while being mindful of the allocation and utilization of resources. *See Halligan*, ___Ohio St.3d ___, 2019-Ohio-3748, ___ N.E.3d____, at ¶ 36 (Fischer, J., concurring). As we have recognized time and time again, " '[T]he primary purpose of disciplinary sanctions is *not to punish the offender, but to protect the public*.' " (Emphasis added). *Disciplinary Counsel v. Schuman*, 152 Ohio St.3d 47, 2017-Ohio-8800, 92 N.E.3d 850, ¶ 17, quoting *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53.

**{¶ 49}** Ordering a disciplined attorney to serve a general term of monitored probation without specific conditions enables this court to keep " ' "on a short leash," ' " *Halligan* at ¶ 34, quoting *Disciplinary Counsel v. Sarver*, 155 Ohio St.3d 100, 2018-Ohio-4717, 119 N.E.3d 405, ¶ 47 (Fischer, J., concurring in part and dissenting in part), attorneys who may need further monitoring but who do not have a specific, identifiable issue or who do not require guidance in a specific area. Conceivably, this court may be, or has been, presented with a case in which the disciplined attorney is one who has been investigated by the Board of Professional Conduct before for certain violations but was not charged (due to a lack of clear and convincing evidence). Or, fathomably, this court has seen a disciplined attorney who is silently struggling with an issue—such as mental health, unidentified addiction, or grief—that was the root cause of the prohibited conduct when neither this court nor the board was privy to such information at the time of the proceedings. *See Halligan* at ¶ 36 (Fischer, J., concurring). A general term of monitored probation, especially in the aforementioned situations, provides this court, through the probation monitor, the flexibility to keep a disciplined attorney

on "a short leash" to help guide that attorney and meet his or her needs, while also adequately protecting the public.

{¶ 50} Furthermore, as I pointed out in my dissenting opinion in *Disciplinary Counsel v. Harmon*, ___Ohio St.3d___, 2019-Ohio-4171, ___N.E.3d___, ¶ 61, reading into the Supreme Court Rules for the Government of the Bar such an extreme requirement of specific terms of monitored probation in every case in which this court orders monitored probation could create significant hardships on this court's disciplinary process by asking even more of the attorneys who volunteer to serve as probation monitors when they are already so giving with their time, knowledge, and expertise. Relatedly, if specific conditions were required in every case, depending on the type of violation presented, there may not be enough monitoring attorneys who have the sufficient expertise required to aid the disciplined attorney in fulfilling the specific terms of his or her monitored probation. These hardships would certainly lessen the protections for the public.

{¶ 51} We should be mindful to utilize only those resources necessary for monitored probation to protect the public and enforce the rules created by this court, while also helping the disciplined attorney. Requiring specific conditions in each attorney-discipline case in which monitored probation is ordered would run afoul of these goals by effectively tying the hands of the relator and placing an arbitrary restriction on the discretion of this court.

{¶ 52} Thus, because ordering a general term of monitored probation without specified conditions is appropriate in a variety of cases, I join the majority opinion and respectfully disagree with the conclusion of the opinion concurring in part and dissenting in part that this court must set forth specific conditions every time that we impose monitored probation. More is not always better.

DONNELLY, J., concurs in the foregoing opinion.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 53} I concur in the majority's determination that respondent, Anthony William Sullivan, should be suspended for two years, with the second year of the suspension stayed, and that he should serve a one-year term of monitored probation following his reinstatement to the practice of law. However, because Gov.Bar R. V(12)(A)(4) and (21)(B)(1) require this court to impose specific conditions on any term of probation we impose, I disagree with the majority's decision not to impose any specific conditions on Sullivan's probation.

{¶ 54} The Supreme Court Rules for the Government of the Bar give this court the sole authority to impose the conditions of probation required by Gov.Bar R. V(21), *Disciplinary Counsel v. Halligan*, ___ Ohio St.3d ___, 2019-Ohio-3748, ___N.E.3d ___, ¶ 42 (Kennedy, J., concurring in part and dissenting in part), and therefore the "failure to attach conditions to probation is more than a missed opportunity to set the criteria and goals for professional redemption, it is an abdication of our duty under the Rules for the Government of the Bar," *id*. at ¶ 41. When this court does not provide guidance to the relator, the respondent, the monitoring attorney, and the Board of Professional Conduct as to the conditions of respondent's probation—conditions specifically designed by this court to protect the public and rehabilitate the respondent—it undermines the effectiveness of the monitored-probation scheme established by Gov.Bar R. V(21). After all, the first duty listed for monitoring attorneys in Gov.Bar R. V(21)(B)(1) is to "[m]onitor compliance by the respondent *with the conditions of probation imposed by the Supreme Court*." (Emphasis added.) And probation cannot be terminated unless "the respondent has complied with the conditions of probation." Gov.Bar R. V(21)(D).

{¶ 55} The majority imposes a term of probation without ordering any conditions *specific to Sullivan's misconduct* for him to follow while he is serving it. Except for the generic duties Gov.Bar R. V(21)(C) imposes on all attorneys on probation, Sullivan and his monitor have no direction regarding their respective

17

duties during the term of monitored probation. The court does not describe what the monitor should be monitoring during the monthly in-person meetings that will be required by Gov.Bar R. V(21)(C)(1), nor does it determine what access the monitor should have to Sullivan's client files and records or even what constitutes a violation of probation—the majority gives no explanation how this court could find that a disciplined attorney has violated the conditions of probation pursuant to Gov.Bar R. V(21)(E) through (K) when no conditions were imposed by the court in the first instance. Without express conditions, imposing probation is not only practically unworkable, but it also raises due-process concerns regarding a disciplined attorney's right to fair notice of what is expected of him or her during the term of probation.

{¶ 56} Therefore, I would impose the following specific conditions for the one-year term of monitored probation overseeing respondent's law-office management and practice as a sole practitioner: (1) respondent shall meet in person with his monitoring attorney on a monthly basis as required by Gov.Bar R. V(21)(C)(1), (2) respondent shall provide his monitoring attorney with a written release or waiver for use in verifying compliance regarding medical, psychological, or other treatment as required by Gov.Bar R. V(21)(C)(2), (3) respondent shall cooperate and work with the monitor, who shall act as a mentor and provide guidance to respondent regarding the proper operation and management of a law practice, (4) respondent, with the relator or monitoring attorney, shall design a comprehensive plan to ensure that he is reasonably diligent in the representation of his clients; in the event respondent cannot act with reasonable diligence in representing his clients, the relator or monitoring attorney may limit the number of active cases respondent may maintain, (5) respondent shall maintain an active-case list or a docketing system and shall give the monitoring attorney an inventory of active cases each month, and (6) respondent shall give the monitoring attorney access to nonconfidential client materials and files, ledgers, and account statements

as needed to allow the monitoring attorney to review respondent's active cases to ensure his compliance with the Rules of Professional Conduct, *see Allen Cty. Bar Assn. v. Williams,* 95 Ohio St.3d 160, 2002-Ohio-2006, 766 N.E.2d 973, ¶ 16.

{¶ 57} Moreover, I would also include the following requirements as additional conditions of probation: respondent shall (1) make restitution of $125 to Tamala Horwath and $1,000 to Andrew Nason, (2) schedule an assessment with the Ohio Lawyers Assistance Program and comply with any recommendations resulting from that assessment, (3) complete 12 hours of continuing-legal education in law-office management and practice as a sole practitioner in addition to the hours required by Gov.Bar R. X, and (4) commit no further misconduct.

{¶ 58} "An effective attorney-probation system—one that follows the Rules for the Government of the Bar—requires the considered input of this court in establishing the conditions of probation." *Halligan*, ___ Ohio St.3d ___, 2019-Ohio-3748, ___ N.E.3d ___, at ¶ 47 (Kennedy, J., concurring in part and dissenting in part). Because the majority fails to impose any conditions on Sullivan's term of probation, I dissent from that part of the court's decision today.

DEWINE, J., concurs in the foregoing opinion.

_____

Dinsmore & Shohl, L.L.P., and Glen R. McMurry; Green & Green, Lawyers, and Jonathan F. Hung; and Jeffrey A. Hazlett, for relator.

Anthony W. Sullivan, pro se.

_____