IN RE RESIGNATION OF LEONE.

**[Cite as *In re Resignation of Leone*, ___ Ohio St.3d ___, 2020-Ohio-2997.]**

*Attorneys at law—Resignation with disciplinary action pending—Gov.Bar R. VI(11)(C).*

(No. 2020-0422—Submitted April 8, 2020—Decided May 19, 2020.)

ON APPLICATION FOR RETIREMENT OR RESIGNATION

PURSUANT TO GOV.BAR R. VI(11).

_____

{¶ 1} Donald Patrick Leone, Attorney Registration No. 0000154, last known address in Poland, Ohio, who was admitted to the bar of this state on April 30, 1976, submitted an application for retirement or resignation pursuant to Gov.Bar R. VI(11). The application was referred to disciplinary counsel pursuant to Gov.Bar R. VI(11)(B). On March 24, 2020, the Office of Attorney Services filed disciplinary counsel's report, under seal, with this court in accordance with Gov.Bar R. VI(11)(B)(2).

{¶ 2} On consideration thereof, it is ordered by the court that pursuant to Gov.Bar R. VI(11)(C), the resignation as an attorney and counselor at law is accepted as a resignation with disciplinary action pending.

{¶ 3} It is further ordered and adjudged that from and after this date all rights and privileges extended to respondent to practice law in the state of Ohio be withdrawn, that henceforth respondent shall cease to hold himself forth as an attorney authorized to appear in the courts of this state, and that respondent shall not attempt, either directly or indirectly, to render services as an attorney or counselor at law to or for any individuals, corporation, or society, nor in any way perform or seek to perform services for anyone, no matter how constituted, that

must by law be executed by a duly appointed and qualified attorney within the state of Ohio.

{¶ 4} It is further ordered that respondent desist and refrain from the practice of law in any form, either as principal or agent or clerk or employee of another, and hereby is forbidden to appear in the state of Ohio as an attorney and counselor at law before any court, judge, board, commission, or other public authority, and hereby is forbidden to give another an opinion as to the law or its application or advise with relation thereto.

{¶ 5} It is further ordered that before entering into an employment, contractual, or consulting relationship with any attorney or law firm, respondent shall verify that the attorney or law firm has complied with the registration requirements of Gov.Bar R. V(23)(C). If employed pursuant to Gov.Bar R. V(23), respondent shall refrain from direct client contact except as provided in Gov.Bar R. V(23)(A)(1) and from receiving, disbursing, or otherwise handling any client trust funds or property.

{¶ 6} It is further ordered that respondent shall not enter into an employment, contractual, or consulting relationship with an attorney or law firm with which respondent was associated as a partner, shareholder, member, or employee at the time respondent engaged in the misconduct that resulted in this acceptance of respondent's resignation with discipline pending.

{¶ 7} It is further ordered that respondent shall surrender respondent's certificate of admission to practice to the clerk of the court on or before 30 days from the date of this order and that respondent's name be stricken from the roll of attorneys maintained by this court.

{¶ 8} It is further ordered by the court that within 90 days of the date of this order, respondent shall reimburse any amounts that have been awarded against respondent by the Lawyers' Fund for Client Protection pursuant to Gov.Bar R. VIII(7)(F). It is further ordered by the court that if after the date of this order the

Lawyers' Fund for Client Protection awards any amount against respondent pursuant to Gov.Bar R. VIII(7)(F), respondent shall reimburse that amount to the Lawyers' Fund for Client Protection within 90 days of the notice of that award.

{¶ 9} It is further ordered that on or before 30 days from the date of this order, respondent shall do the following:

{¶ 10} 1.  Notify all clients being represented in pending matters and any co-counsel of respondent's resignation and consequent disqualification to act as an attorney after the effective date of this order and, in the absence of co-counsel, also notify the clients to seek legal services elsewhere, calling attention to any urgency in seeking the substitution of another attorney in respondent's place;

{¶ 11} 2.  Regardless of any fees or expenses due, deliver to all clients being represented in pending matters any papers or other property pertaining to the client or notify the clients or co-counsel, if any, of a suitable time and place where the papers or other property may be obtained, calling attention to any urgency for obtaining such papers or other property;

{¶ 12} 3.  Refund any part of any fees or expenses paid in advance that are unearned or not paid and account for any trust money or property in the possession or control of respondent;

{¶ 13} 4.  Notify opposing counsel or, in the absence of counsel, the adverse parties in pending litigation of respondent's disqualification to act as an attorney after the effective date of this order and file a notice of disqualification of respondent with the court or agency before which the litigation is pending for inclusion in the respective file or files;

{¶ 14} 5.  Send all notices required by this order by certified mail with a return address where communications may thereafter be directed to respondent;

{¶ 15} 6.  File with the clerk of this court and disciplinary counsel of the Supreme Court an affidavit showing compliance with this order, showing proof of

service of the notices required herein, and setting forth the address where respondent may receive communications; and

{¶ 16} 7.   Retain and maintain a record of the various steps taken by respondent pursuant to this order.

{¶ 17} It is further ordered that on or before 30 days from the date of this order, respondent shall surrender the attorney-registration card for the 2019/2021 biennium.

{¶ 18} It is further ordered that until such time as respondent fully complies with this order, respondent shall keep the clerk and disciplinary counsel advised of any change of address where respondent may receive communications.

{¶ 19} It is further ordered that all documents filed with this court in this case shall meet the filing requirements set forth in the Rules of Practice of the Supreme Court of Ohio, including requirements as to form, number, and timeliness of filings.  All case documents are subject to Sup.R. 44 through 47, which govern access to court records.

{¶ 20} It is further ordered that service shall be deemed made on respondent by sending this order and all other orders in this case to respondent's last known address.

{¶ 21} It is further ordered that the clerk of this court issue certified copies of this order as provided for in Gov.Bar R. V(17)(D)(1) and that publication be made as provided for in Gov.Bar R. V(17)(D)(2).

O'CONNOR, C.J., and KENNEDY, FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

FISCHER, J., dissents, with an opinion.

_____

**FISCHER, J., dissenting.**

{¶ 22} Respectfully, I dissent.  Because the report prepared by disciplinary counsel under Gov.Bar R. VI(11)(B) in this case is sealed and I therefore cannot

discuss the facts, this dissenting opinion is not case-specific. Rather, I write in general terms to highlight my concerns with this court's common practice of accepting applications to resign when there is discipline pending.

## I. The Troubling Aspects of Routinely Accepting Applications to Resign with Discipline Pending

{¶ 23} This case involves an application to resign with discipline pending. In recent years, this court has accepted an average of about 15 of these resignations a year, with this court accepting 20 resignations with disciplinary action pending in 2015, 19 in 2016, 12 in 2017, 14 in 2018, and 12 in 2019.

{¶ 24} To me, these cases present this court with some of the most difficult questions that it faces in the area of attorney discipline. Others might see them as easy, in that an attorney who resigns from the practice of law is no longer a threat to cause harm to the public—*see, e.g., Disciplinary Counsel v. Edwards*, 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857, ¶ 19 (recognizing that the primary purpose of our attorney-discipline system is to protect the public). These cases remain unusually difficult to me because of problems within the system we have established for ourselves—that is for the members of the bench and bar—in this court's regulating of the practice of law in Ohio.

{¶ 25} The Supreme Court of Ohio has the clear and full constitutional power to administer and regulate the practice of law in this state. Our state Constitution confers "original jurisdiction" upon this court over "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law." Ohio Constitution, Article IV, Section 2(B)(1)(g). Because this court alone determines how all matters regarding the practice of law will be administered and regulated in Ohio, we could create a better system to deal with the following troubling aspects inherent in the practice of accepting resignations while discipline is pending.

## A. *Transparency*

{¶ 26} First, these resignation-with-discipline-pending cases are the epitome of antithetical examples that are contrary to the concept that state government should be as transparent as reasonably possible. These cases are "sealed" proceedings, and neither the public nor the bench and practicing bar have any idea what has occurred in these cases. As numerous as these cases are, this lack of transparency is a problem when an application to resign with discipline pending is accepted.

{¶ 27} Allowing these types of resignations closes off information from the public, a factor that must be weighed in the calculation of the cost-benefit for accepting a resignation with discipline pending. For example, assume for the sake of argument that an investigation has uncovered evidence of possible criminal conduct. While disciplinary counsel and the grievance committees have some obligations to turn over such information to local law-enforcement authorities, *see* Gov.Bar R. I(13)(D)(2) and V(8)(A)(1)(c), is this the type of information that this court should be hiding from the public?

{¶ 28} This factor must also be considered when weighing the decision whether to accept a resignation with discipline pending. For local law enforcement may not be inclined, or not have time or resources, to deal with a lawyer's malfeasance. It is possible the local law-enforcement authorities would feel that the resignation is enough of a "punishment" or sanction for the attorney's misbehavior. Under those conditions, the resigning attorney would just move on to some other occupation and the public would never know of that now-resigned attorney's criminal-like conduct. Should our court be a party to this? Given that the citizens of Ohio gave this court plenary power over the admission and practice of law in the state of Ohio, should we not be doing a better job of notifying the public of such poor behavior by an attorney licensed by this court?

### B. The Inefficiency of the System

{¶ 29} Second, one of the superficial arguments in favor of accepting these resignations is based upon the fact that a disciplinary investigation, hearings, and a decision from this court can take a long time. The logic of this argument is that by getting the lawyer out of the legal system sooner rather than later, there is a net benefit to the public. At a superficial level, that argument is true; however, it is true only because we have created a system in which it takes much, much too long to resolve an attorney-discipline case.

{¶ 30} On average, a typical case in which a grievance is filed with disciplinary counsel, a formal complaint is filed after an investigation, and the respondent lawyer objects to the report and recommendation from the Board of Professional Conduct to the Ohio Supreme Court takes nearly 1,000 days to resolve. *See Report and Recommendations of the Supreme Court of Ohio Task Force on the Ohio Disciplinary System* (September 2019) at 20-23 (370 days for investigation of grievance before filing of formal complaint, approximately 282 days from certification of complaint to board disposition, and 341 days from filing with this court to final disposition). This is a ridiculous amount of time. Indeed, murder cases are often indicted and tried in less time.

{¶ 31} If our disciplinary system were more efficient and swifter, this argument would be far less compelling. We, the court, can alter that system. In fact, proposals are pending to try to do just that. *See id.* at 19, 20-26. Barring any alterations, however, our disciplinary process causes us to impose nontransparent discipline, effectively through a forced resignation, because we have a system that takes too long. In other words, we have created the very reason that essentially forces this court to grant a "plea deal" for these "hidden" ethical violations that have harmed the public. That is quite a circular argument in favor of accepting these resignations.

*C. Client Restitution*

{¶ 32} Third, there is the issue of money and its related issue of restitution. Many of these resignation-with-discipline-pending cases have within them strong allegations of money still owed by the resigning attorney to former clients. Some of this money owed comes through attorney fees taken for work not done and/or fiduciary violations in moneys taken from estates and settlements, as well as funds improperly taken out of client trust accounts. Again, the superficial argument is that the resignation is better for the public, because the sooner the resignation is accepted, the sooner the harmed clients can obtain restitution via applications to the Lawyers' Fund for Client Protection ("the Fund").

{¶ 33} This Fund was established as the Clients' Security Fund in 1985. *See The Supreme Court of Ohio Lawyers' Fund for Client Protection Annual Report* (2019) at 1. As of its 2019 annual report, this Fund has compensated poorly treated clients of Ohio lawyers to the tune of more than $24 million. *Id.* According to its recent annual reports, in the three years that I have been a member of this court, the Fund has reimbursed claims totaling nearly $2 million. In those three years, the Fund incurred administrative costs totaling approximately $1.25 million. This is an excellent, important, and upward-lifting program put together by this court, supported by the lawyers of Ohio through their attorney-registration fees, for the benefit of the public.

{¶ 34} Applications to recover from the Fund must be presented within one year of the occurrence or discovery of the loss, and the maximum recovery by any single claimant is limited to $75,000. Gov.Bar R. VIII(3)(C) and (5). Again, there are proposals pending to alter that system, and that is a good thing.

{¶ 35} However, the Fund's current rules and regulations—a system that this court can change—contribute to an unnecessary leaning by members of this court in favor of the arguments to accept these resignations with discipline pending. Because this compensation system is based upon funds supplied by the lawyers of

Ohio—and no one else—along with some interest, there must be some limitations on the payouts, as the lawyers of Ohio cannot underwrite all losses caused by miscreant lawyers. But consider a scenario in which an attorney is liable to the client for more than $100,000 or even more than $1 million. In either case, the compensation available to the client under the Fund is capped at $75,000. What about a settlement in a personal-injury case for $300,000? Even if the client was entitled to two-thirds of the settlement and the resigning lawyer took all the money, the client could receive only $75,000 from the Fund, when the client would instead need to receive $200,000 in order to be made whole.

{¶ 36} One might suggest that we could increase the amount of money in the Fund by increasing the $350 per biennium lawyer-registration fee upon which the Fund relies. In my view, however, it would be unfair to increase that registration fee at this time, even for a program that does so much good and is handled so well by the individuals who administer it.

{¶ 37} Another method of providing restitution to a wronged client would be to require the lawyer, or former lawyer, who was responsible for the loss to reimburse the client. The current discipline system, however, does not permit this court to condition our acceptance of a resignation with discipline pending by requiring the resigning lawyer to make restitution before the resignation can take place. The decision by the justices of this court on a request to resign with discipline pending is a basic accept or deny, i.e., we are limited to making a "yes" or "no" decision. This court could change that rule under its constitutional authority. By not doing so, this court again creates its own unnecessary rationale for accepting a nontransparent resignation of an attorney with discipline pending.

{¶ 38} In one of the strangest parts of these cases, this court is confidentially informed of possible restitution amounts still owing to clients and beneficiaries due to breaches of fiduciary duties of some of the resigning lawyers in the reports submitted by disciplinary counsel under Gov.Bar R. VI(11)(B). Yet this court is

never informed in those same reports of the potential resigning lawyer's financial situation. This court, then, must decide to deny or to accept the resignation with possible discipline pending without having all of the necessary information to make an informed decision. While this court knows whether there is a legitimate argument regarding needed restitution, the court is unaware of whether the resigning attorney has access to funds to make some or all of that restitution. We could require that an attorney who wishes to resign must provide financial information to allow us to determine if the resignation should be denied for a lack of the ability to make restitution, but we do not. Once again, we have created, within our own disciplinary system, a system that favors these resignations with discipline pending by tilting the scale in favor of accepting the resignations. And despite the fact that we have the authority to change that system, we have not done so.

{¶ 39} An argument for not changing the current system is that this court should continue to accept these resignations without ordering restitution (or accept the resignations, even if restitution should be provided) because the Ohio Attorney General can always sue to recover those moneys on behalf of the Fund. But while the Fund has paid out nearly $2 million in claims during the three years I have been on this court, the Fund's recent annual reports indicate that the Attorney General's office has returned to the Fund less than $85,000 during that time. That is a ratio of about $1 dollar returned by the Attorney General's office for every $23 paid by the Fund.

{¶ 40} I am not critical of the Ohio Attorney General's office, as I recognize that there are likely many reasons that this number is so low and that these reasons may be outside of the control of that office, whether they may be the inability to recover fees from very many resigned attorneys or simply because other matters take higher priority. Nevertheless, these numbers show that this argument in favor of accepting resignations with discipline pending—the argument that we should

continue this practice because the Ohio Attorney General can collect restitution owed—is not a strong argument at all and is superficial at best.

### D. Inappropriate Timing

{¶ 41} Fourth and finally, there is a related issue regarding when the resignation with discipline pending is requested. One of the arguments in favor of accepting these resignations is that every resignation that is accepted will save the disciplinary system resources, including the time of the volunteer lawyers on the certified grievance committees. There are three phases to the disciplinary process: investigation, the Board of Professional Conduct's review, and the Ohio Supreme Court's review. If this court allowed these types of resignations to be made only during the first phase of the disciplinary process, the investigative phase, then the argument that accepting these types of resignations saves time and resources might be true in certain instances. For example, if the resignation request is filed at the beginning of the investigation, then there might be some substantial savings in resources.

{¶ 42} But, on the other hand, if the resignation request is filed during a later stage, such as while the board determines whether there is probable cause, there is a real question as to what resources are actually being saved, because by that time the investigators should have uncovered documents, interviewed witnesses, and put together the case that disciplinary counsel or the grievance committee believes will show by clear and convincing evidence—which is not a low standard—that it will prevail against the respondent lawyer.

{¶ 43} Admittedly, even if the resignation occurs later, some resources will always be saved. But are the savings at later points in the process so material as to outweigh the hiding of the unethical behavior by the lawyer from the public as well as the practicing bar and bench? I would say that such savings are nominal.

## II. Conclusion

**{¶ 44}** Based upon the arguments and issues raised above (which may or may not apply to this specific case), I respectfully dissent and would not accept the resignation with discipline pending in this case. I also invite my colleagues on this court, as well as members of the bench and bar, to consider whether we should revisit our practices and procedures related to the acceptance of resignations with discipline pending.

_____