IN RE RESIGNATION OF BERLING.

**[Cite as *In re Resignation of Berling*, ___ Ohio St.3d ___, 2020-Ohio-5060.]**

*Attorneys at law—Resignation with disciplinary action pending—Gov.Bar R. VI(11)(C).*

(No. 2020-1027—Submitted September 9, 2020—Decided October 28, 2020.)

ON APPLICATION FOR RETIREMENT OR RESIGNATION

PURSUANT TO GOV.BAR R. VI(11).

_____

{¶ 1} Mark David Berling, Attorney Registration No. 0002444, last known business address in Toledo, Ohio, who was admitted to the bar of this state on May 9, 1983, submitted an application for retirement or resignation pursuant to Gov.Bar R. VI(11). The application was referred to disciplinary counsel pursuant to Gov.Bar R. VI(11)(B). On August 20, 2020, the Office of Attorney Services filed disciplinary counsel's report, under seal, with this court in accordance with Gov.Bar R. VI(11)(B)(2).

{¶ 2} On consideration thereof, it is ordered by the court that pursuant to Gov.Bar R. VI(11)(C), the resignation as an attorney and counselor at law is accepted as a resignation with disciplinary action pending.

{¶ 3} It is further ordered and adjudged that from and after this date all rights and privileges extended to respondent to practice law in the state of Ohio be withdrawn, that henceforth respondent shall cease to hold himself forth as an attorney authorized to appear in the courts of this state, and that respondent shall not attempt, either directly or indirectly, to render services as an attorney or counselor at law to or for any individuals, corporation, or society, nor in any way perform or seek to perform services for anyone, no matter how constituted, that

must by law be executed by a duly appointed and qualified attorney within the state of Ohio.

{¶ 4} It is further ordered that respondent desist and refrain from the practice of law in any form, either as principal or agent or clerk or employee of another, and hereby is forbidden to appear in the state of Ohio as an attorney and counselor at law before any court, judge, board, commission, or other public authority, and hereby is forbidden to give another an opinion as to the law or its application or advise with relation thereto.

{¶ 5} It is further ordered that before entering into an employment, contractual, or consulting relationship with any attorney or law firm, respondent shall verify that the attorney or law firm has complied with the registration requirements of Gov.Bar R. V(23)(C). If employed pursuant to Gov.Bar R. V(23), respondent shall refrain from direct client contact except as provided in Gov.Bar R. V(23)(A)(1) and from receiving, disbursing, or otherwise handling any client trust funds or property.

{¶ 6} It is further ordered that respondent shall not enter into an employment, contractual, or consulting relationship with an attorney or law firm with which respondent was associated as a partner, shareholder, member, or employee at the time respondent engaged in the misconduct that resulted in this acceptance of respondent's resignation with discipline pending.

{¶ 7} It is further ordered that respondent shall surrender respondent's certificate of admission to practice to the clerk of the court on or before 30 days from the date of this order and that respondent's name be stricken from the roll of attorneys maintained by this court.

{¶ 8} It is further ordered by the court that within 90 days of the date of this order, respondent shall reimburse any amounts that have been awarded against respondent by the Lawyers' Fund for Client Protection pursuant to Gov.Bar R. VIII(7)(F). It is further ordered by the court that if after the date of this order the

Lawyers' Fund for Client Protection awards any amount against respondent pursuant to Gov.Bar R. VIII(7)(F), respondent shall reimburse that amount to the Lawyers' Fund for Client Protection within 90 days of the notice of that award.

{¶ 9} It is further ordered that on or before 30 days from the date of this order, respondent shall do the following:

{¶ 10} 1.  Notify all clients being represented in pending matters and any cocounsel of respondent's resignation and consequent disqualification to act as an attorney after the effective date of this order and, in the absence of cocounsel, also notify the clients to seek legal services elsewhere, calling attention to any urgency in seeking the substitution of another attorney in respondent's place;

{¶ 11} 2.  Regardless of any fees or expenses due, deliver to all clients being represented in pending matters any papers or other property pertaining to the client or notify the clients or cocounsel, if any, of a suitable time and place where the papers or other property may be obtained, calling attention to any urgency for obtaining such papers or other property;

{¶ 12} 3.  Refund any part of any fees or expenses paid in advance that are unearned or not paid and account for any trust money or property in the possession or control of respondent;

{¶ 13} 4.  Notify opposing counsel or, in the absence of counsel, the adverse parties in pending litigation of respondent's disqualification to act as an attorney after the effective date of this order and file a notice of disqualification of respondent with the court or agency before which the litigation is pending for inclusion in the respective file or files;

{¶ 14} 5.  Send all notices required by this order by certified mail with a return address where communications may thereafter be directed to respondent;

{¶ 15} 6.  File with the clerk of this court and disciplinary counsel of the Supreme Court an affidavit showing compliance with this order, showing proof of

service of the notices required herein, and setting forth the address where respondent may receive communications; and

{¶ 16} 7.  Retain and maintain a record of the various steps taken by respondent pursuant to this order.

{¶ 17} It is further ordered that until such time as respondent fully complies with this order, respondent shall keep the clerk and disciplinary counsel advised of any change of address where respondent may receive communications.

{¶ 18} It is further ordered that all documents filed with this court in this case shall meet the filing requirements set forth in the Rules of Practice of the Supreme Court of Ohio, including requirements as to form, number, and timeliness of filings.  All case documents are subject to Sup.R. 44 through 47, which govern access to court records.

{¶ 19} It is further ordered that service shall be deemed made on respondent by sending this order and all other orders in this case to respondent's last known address.

{¶ 20} It is further ordered that the clerk of this court issue certified copies of this order as provided for in Gov.Bar R. V(17)(D)(1) and that publication be made as provided for in Gov.Bar R. V(17)(D)(2).

KENNEDY, DEWINE, DONNELLY, and STEWART, JJ., concur.

FRENCH, J., dissents.

FISCHER, J., dissents, with an opinion joined by O'CONNOR, C.J.

––––––––––––––––––

**FISCHER, J., dissenting.**

{¶ 21} I must respectfully dissent.

{¶ 22} As I have previously noted, because of confidentiality concerns involved in these attorney-resignation cases, the ability to write a case-specific dissent focusing on the details before the court is limited, as the report provided to this court by disciplinary counsel is, properly, submitted under seal.  *In re*

*Resignation of Leone*, ___ Ohio St.3d ___, 2020-Ohio-2997, ___ N.E.3d ___, ¶ 22 (Fischer, J., dissenting), citing Gov.Bar R. VI(11)(B). I am in a similar situation again; however, I will try.

{¶ 23} The reports this court receives in connection with applications for retirement or resignation pursuant to Gov.Bar R. VI(11) are well written and well thought out. There is, however, one area of exception, a gap, in regard to these reports. In many of these lawyer-resignation cases, the resigning attorney, at least as indicated on the surface of the report, still owes former clients restitution for money taken from those clients; however, this court is never informed of the resigning lawyer's ability, either presently or in the future, to pay restitution.

{¶ 24} The reports do generally note, to the extent it can be reasonably ascertained, that the resigning lawyer still owes a certain amount of money to clients, and they will often mention that the Lawyers' Fund for Client Protection ("the Fund") can be a source of recompense for those forlorn clients, *see generally* Gov.Bar R. VIII. This statement, as far as it goes, is generally true.

{¶ 25} Many of these reports then state that the attorney's clients can potentially be fully compensated by the Fund. This is not always true, however, because there are limitations on those recoveries. *See, e.g.*, Gov.Bar R. VIII(5) (limiting the amount of reimbursement that can be awarded to a claimant to $75,000). The reports also generally note that if the resigning attorney does not reimburse the Fund for awards it has made to former clients, the Ohio Attorney General can sue the resigning attorney for the remaining money on behalf of the Fund. As I have previously noted, often these attempts are, understandably, ineffective, in part because the Ohio Attorney General's office certainly has numerous other important duties. *Leone*, ___ Ohio St.3d ___, 2020-Ohio-2997, ___ N.E.3d ___, at ¶ 39-40 (Fischer, J., dissenting). Hence, the amount recovered by that office is, at best, a few cents on the dollar. *Id.* at ¶ 39 (Fischer, J., dissenting).

**{¶ 26}** These resignation reports do not provide any analysis regarding the resigning attorney's current assets or the attorney's future ability either to pay back money owed to wronged former clients that is not reimbursed by the Fund or to reimburse the Fund for the awards it has made to those former clients.

**{¶ 27}** The resigning attorneys' former clients, the public, and the lawyers of Ohio are all harmed in these situations. The compensation awarded by the Fund comes directly out of the attorney-registration fees paid by the attorneys of Ohio. *See id.* at ¶ 36 (Fischer, J., dissenting). In my view, the lawyers of Ohio have, without strenuous objection, provided a remarkable amount of money to help the public in this way. In fact, they enabled the Fund to award a grand total of nearly $2 million dollars to wronged clients from 2017 through 2019. *See id*. at ¶ 39 (Fischer, J., dissenting).

**{¶ 28}** According to statistics compiled after a review was conducted of cases over the past ten years in which this court has accepted resignations with disciplinary action pending, the total amount of restitution awarded by the Fund to former clients of resigning attorneys was calculated to have been more than $3.7 million. During that same time period, the Fund has recovered less than $50,000 from those attorneys; this amount includes the money recovered with the assistance of the Ohio Attorney General. That is about 1.3 cents recovered per every dollar awarded. That is a very low recovery percentage and is one of the reasons why "it pays" for a lawyer charged with unethical conduct to resign with discipline pending.

**{¶ 29}** The resigning attorney's former clients may or may not, depending on the amount owed, be reimbursed in full for their losses. Plus, these harmed members of the public are forced to apply and wait for recompense. So, in the end, the public, the former clients, and Ohio's attorneys all lose under this system.

**{¶ 30}** Significantly, because the more than $3.7 million awarded by the Fund to former clients of resigning attorneys over the past ten years came from attorney-registration fees, that money was effectively paid to the victims of those

resigning attorneys from the pockets of Ohio's lawyers. Is it fair to the lawyers of this state to be forced to pay a higher registration fee than is reasonably necessary, simply because no one examines the ability of a resigning attorney to use his or her assets to pay restitution that is due to harmed members of the public? The fact that only about 1.3 cents are recovered on each dollar paid out by the Fund to the victims of these resigning attorneys should be an embarrassment to this court. When Ohio's lawyers pay their registration fees to this court, they should be able to have confidence that this court takes the most basic of measures to ensure they are not unnecessarily paying fees that this court could otherwise order be collected from resigning attorneys.

{¶ 31} Moreover, because disciplinary counsel's reports to this court provide no basis for this court to assume that a resigning lawyer has, or does not have, assets or the future ability to fully compensate his or her former clients or the Fund, this court is required to make baseless, specious assumptions about the resigning attorney's ability or inability to do so. From the information provided in the reports regarding resignations—and maybe these efforts are taken into account but the reports do not inform this court of them—it is usually not clear whether such basic financial background information has been sought by the disciplinary counsel's office or provided by the resigning lawyer. A simple review of the applying attorney's bank accounts, real and personal property, and other assets, or even a rather simplistic "judgment-debtor exam" of the resigning lawyer, could easily collect that information and could establish whether some assets may possibly have been fraudulently conveyed.

{¶ 32} To avoid overburdening the disciplinary counsel's office, perhaps the best practice would be to require a lawyer who wishes to resign with discipline pending who owes some restitution, at the time he or she submits an application to resign, to provide financial statements, bank statements, income-tax forms, and other basic financial information under oath. Or, perhaps, this court could require

that the resigning attorney agree, if he or she so desires to resign while still owing restitution to any former clients, to submit to a judgment-debtor exam under oath. This simple act would provide the court the necessary information to prevent us from having to make totally baseless and perhaps specious assumptions.

{¶ 33} Admittedly, as the old saying goes, one "can't squeeze blood out of a turnip."  But if one has not even examined the turnip to determine if there is any "blood" in it, one will never know what a little "squeezing" might have produced.

{¶ 34} Thus, I must respectfully dissent because, based on these reports submitted by disciplinary counsel, I cannot tell if there is any "blood" in the "turnip" available to pay any restitution in these cases.

O'CONNOR, C.J., concurs in the foregoing opinion.

_____