[This opinion has been published in *Ohio Official Reports* at __ Ohio St.3d __.]

**IN RE RESIGNATION OF STENSON.**

**[Cite as *In re Resignation of Stenson*, ___ Ohio St.3d ___, 2025-Ohio-492.]**

*Attorneys at law—Resignation with disciplinary action pending—Gov.Bar R. VI(11)(C).*

(No. 2024-1736—Submitted January 7, 2025—Decided February 18, 2025.)

ON APPLICATION FOR RETIREMENT OR RESIGNATION

PURSUANT TO GOV.BAR R. VI(11).

_____

{¶ 1} David Edmund Stenson, Attorney Registration No. 0042671, last known business address in Dayton, Ohio, who was admitted to the bar of this State on November 6, 1989, submitted an application for retirement or resignation pursuant to Gov.Bar R. VI(11). The application was referred to disciplinary counsel pursuant to Gov.Bar R. VI(11)(B). On December 16, 2024, the Office of Attorney Services filed disciplinary counsel's report, under seal, with this court in accordance with Gov.Bar R. VI(11)(B)(2).

{¶ 2} On consideration thereof, it is ordered by the court that pursuant to Gov.Bar R. VI(11)(C), the resignation as an attorney and counselor at law is accepted as a resignation with disciplinary action pending.

{¶ 3} It is further ordered and adjudged that from and after this date all rights and privileges extended to respondent to practice law in the State of Ohio be withdrawn, that henceforth respondent shall cease to hold himself forth as an attorney authorized to appear in the courts of this State, and that respondent shall not attempt, either directly or indirectly, to render services as an attorney or counselor at law to or for any individuals, corporation, or society, nor in any way perform or seek to perform services for anyone, no matter how constituted, that

must by law be executed by a duly appointed and qualified attorney within the State of Ohio.

{¶ 4} It is further ordered that respondent desist and refrain from the practice of law in any form, either as principal or agent or clerk or employee of another, and hereby is forbidden to appear in the State of Ohio as an attorney and counselor at law before any court, judge, board, commission, or other public authority, and hereby is forbidden to give another an opinion as to the law or its application or advise with relation thereto.

{¶ 5} It is further ordered that before entering into an employment, contractual, or consulting relationship with any attorney or law firm, respondent shall verify that the attorney or law firm has complied with the registration requirements of Gov.Bar R. V(23)(C). If employed pursuant to Gov.Bar R. V(23), respondent shall refrain from direct client contact except as provided in Gov.Bar R. V(23)(A)(1) and from receiving, disbursing, or otherwise handling any client trust funds or property.

{¶ 6} It is further ordered that respondent shall not enter into an employment, contractual, or consulting relationship with an attorney or law firm with which respondent was associated as a partner, shareholder, member, or employee at the time respondent engaged in the misconduct that resulted in this acceptance of respondent's resignation with discipline pending.

{¶ 7} It is further ordered that respondent shall surrender respondent's certificate of admission to practice to the clerk of the court on or before 30 days from the date of this order and that respondent's name be stricken from the roll of attorneys maintained by this court.

{¶ 8} It is further ordered by the court that within 90 days of the date of this order, respondent shall reimburse any amounts that have been awarded against respondent by the Lawyers' Fund for Client Protection pursuant to Gov.Bar R. VIII(7)(F). It is further ordered by the court that if after the date of this order the

Lawyers' Fund for Client Protection awards any amount against respondent pursuant to Gov.Bar R. VIII(7)(F), respondent shall reimburse that amount to the Lawyers' Fund for Client Protection within 90 days of the notice of that award.

{¶ 9} It is further ordered that on or before 30 days from the date of this order, respondent shall do the following:

{¶ 10} 1. Notify all clients being represented in pending matters and any cocounsel of respondent's resignation and consequent disqualification to act as an attorney after the effective date of this order and, in the absence of cocounsel, also notify the clients to seek legal services elsewhere, calling attention to any urgency in seeking the substitution of another attorney in respondent's place;

{¶ 11} 2. Regardless of any fees or expenses due, deliver to all clients being represented in pending matters any papers or other property pertaining to the client or notify the clients or cocounsel, if any, of a suitable time and place where the papers or other property may be obtained, calling attention to any urgency for obtaining such papers or other property;

{¶ 12} 3. Refund any part of any fees or expenses paid in advance that are unearned or not paid and account for any trust money or property in the possession or control of respondent;

{¶ 13} 4. Notify opposing counsel or, in the absence of counsel, the adverse parties in pending litigation of respondent's disqualification to act as an attorney after the effective date of this order and file a notice of disqualification of respondent with the court or agency before which the litigation is pending for inclusion in the respective file or files;

{¶ 14} 5. Send all notices required by this order by certified mail with a return address where communications may thereafter be directed to respondent;

{¶ 15} 6. File with the clerk of this court and disciplinary counsel of the Supreme Court an affidavit showing compliance with this order, showing proof of

service of the notices required herein, and setting forth the address where respondent may receive communications; and

{¶ 16} 7.   Retain and maintain a record of the various steps taken by respondent pursuant to this order.

{¶ 17} It is further ordered that until such time as respondent fully complies with this order, respondent shall keep the clerk and disciplinary counsel advised of any change of address where respondent may receive communications.

{¶ 18} It is further ordered that all documents filed with this court in this case shall meet the filing requirements set forth in the Rules of Practice of the Supreme Court of Ohio, including requirements as to form, number, and timeliness of filings.  All case documents are subject to Sup.R. 44 through 47, which govern access to court records.

{¶ 19} It is further ordered that service shall be deemed made on respondent by sending this order and all other orders in this case to respondent's last known address.

{¶ 20} It is further ordered that the clerk of this court issue certified copies of this order as provided for in Gov.Bar R. V(17)(E)(1) and that publication be made as provided for in Gov.Bar R. V(17)(E)(2).

KENNEDY, C.J., and DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ., concur.

FISCHER, J., dissents, with an opinion.

BRUNNER, J., not participating.

_____

**FISCHER, J., dissenting.**

{¶ 21} I respectfully dissent from this court's decision accepting the resignation of David Edmund Stenson.  Due to confidentiality concerns, I have a limited ability to write a case-specific dissent focusing on the details before the court.  *See In re Resignation of Leone*, 2020-Ohio-2997, ¶ 22 (Fischer, J.,

dissenting), citing Gov.Bar R. VI(11)(B). Despite these confidentiality hurdles, I am again compelled to highlight my concerns with this court's common practice of accepting an attorney's application to resign when there is disciplinary action pending. *See id.* at ¶ 22-44; *In re Resignation of Berling*, 2020-Ohio-5060, ¶ 21-34 (Fischer, J., dissenting); *In re Resignation of Wiggins*, 2021-Ohio-1347, ¶ 21-26 (Fischer, J., dissenting); *In re Resignation of Kingsbury*, 2024-Ohio-90, ¶ 21-27 (Fischer, J., dissenting).

**{¶ 22}** Attorney-resignation cases present this court with some of the most difficult questions in the area of attorney discipline. These cases require us to balance whether the benefits of a swift conclusion to attorney-disciplinary proceedings by accepting an attorney's resignation outweigh the disadvantages of a longer, though more transparent and complete, resolution of that attorney's disciplinary proceedings. *See Leone* at ¶ 26-31 (Fischer, J., dissenting). On the one hand, by accepting an attorney's application for resignation, we can quickly remove that attorney from the practice of law and prevent further harm to the public. *See id.* at ¶ 29. On the other hand, we deprive the public, the bench, and the bar of much-needed transparency in the disciplinary process, *see id.* at ¶ 26-28, 41-43, and we relinquish our ability to aid the resigning attorney in overcoming any obstacles that may have triggered the underlying misconduct that led to the disciplinary proceedings, *see Dayton Bar Assn. v. Sullivan*, 2020-Ohio-124, ¶ 49 (Fischer, J., concurring). But the scale tilts in favor of denying an attorney's application for resignation with discipline pending when the attorney still owes money to former clients. *See Berling* at ¶ 23-33 (Fischer, J., dissenting); *Kingsbury* at ¶ 21, 26-27 (Fischer, J., dissenting).

**{¶ 23}** When the resigning attorney still owes restitution for money taken from former clients, at least as indicated in disciplinary counsel's report, we must consider if and how those clients will be made whole. *See Berling* at ¶ 23, 31-32 (Fischer, J., dissenting). During disciplinary proceedings, the severity of the

sanction may hinge on whether the attorney has paid or still owes restitution to a client. *See* Gov.Bar R. V(13)(B)(9) and (C)(3). And if the attorney has not made restitution, we are able to order the sanctioned attorney to pay restitution. Gov.Bar R. V(17)(D)(1). However, we do not have the same authority when we accept an attorney's application for resignation—we cannot ensure that the former client is made whole. *See* Gov.Bar R. V(17)(D)(2).

{¶ 24} To address this concern, many of disciplinary counsel's sealed reports note that a client may seek restitution from the Lawyers' Fund for Client Protection ("the Fund"). *See Berling*, 2020-Ohio-5060, at ¶ 24-25 (Fischer, J., dissenting). It is true that the Fund, which was created specifically to "aid in ameliorating the losses caused to clients and others by defalcating members of the bar acting as attorney or fiduciary," Gov.Bar R. VIII(1)(A), can be a source of recompense for those aggrieved clients who are the victims of the resigning attorney's misconduct, *Berling* at ¶ 24 (Fischer, J., dissenting). However, the Fund is not without its limits. *See id.* at ¶ 25.

{¶ 25} Disbursements from the Fund are wholly discretionary and are made only after its board of commissioners has investigated the client's claim. Gov.Bar R. VIII(1)(A), (2)(C), and (7)(F). The board considers a number of factors in deciding whether to reimburse an aggrieved client from the Fund, including the amount available for the payment of claims compared to the number of claims presented, the amount of the client's loss as compared to the amount of losses sustained by others who are eligible to seek assistance from the Fund, the degree of hardship suffered by the client as a result of the loss, and the client's contributing negligence. *See* Gov.Bar R. VIII(7)(F)(1) through (4). Additionally, any recovery through the Fund is capped at $100,000. Gov.Bar R. VIII(5). Thus, while the Fund presents an opportunity for an aggrieved client to be reimbursed, there is no guarantee that the client will be restored to his or her original financial position.

**{¶ 26}** The financial gamble of using the Fund to reimburse the resigning attorney's former clients rather than waiting for the conclusion of attorney-disciplinary proceedings, *see* Gov.Bar R. VIII(3)(C), may be suitable for some clients who need a more expeditious result. *See Leone*, 2020-Ohio-2997, at ¶ 32 (Fischer, J., dissenting). This is especially true if the resigning attorney would never have had the ability to pay any restitution. But it is hard to justify such a gamble—knowing that there is a possibility that a former client, who has already been harmed by the resigning attorney's misconduct, may not be made whole by the Fund—when the resigning attorney may well have the ability to pay restitution. The problem we face in these cases is that we do not know whether the resigning attorney has the ability to pay restitution, *see Berling* at ¶ 26 (Fischer, J., dissenting), and thus we cannot adequately balance these concerns. Instead, we are left to presume and hope that the Fund is the best solution to adequately compensate any aggrieved clients, all for a more expeditious result.

**{¶ 27}** Some may believe that we need not consider the resigning attorney's ability to pay restitution, because the attorney would be required to reimburse the Fund for any disbursements paid to the former client. *See Berling*, 2020-Ohio-5060, at ¶ 25 (Fischer, J., dissenting). It is true that the Ohio Attorney General, on behalf of the Fund, may sue the resigning attorney for reimbursement of the paid-out disbursements. *Leone* at ¶ 39-40 (Fischer, J., dissenting). However, when the Fund has recovered money from attorneys resigning with disciplinary action pending, it amounts to only 1.3 cents recovered for every dollar awarded. *See Berling* at ¶ 28 (Fischer, J., dissenting) (This 1.3-cents figure was based on "statistics compiled after a review of cases" from the ten-year period preceding October 2020.). By accepting an attorney's application to resign with discipline pending without determining the attorney's ability to provide restitution to aggrieved clients, we not only subject the former clients to potential harm, but we also blindly subject the Fund to senseless financial strain.

**{¶ 28}** We also owe it to the lawyers of Ohio—who support the Fund through their registration fees, thereby enabling it to award more than $26 million to aggrieved clients since its inception—to ensure that the Fund is utilized as an *aid*, not as a substitute for a valid order of restitution against the attorney seeking to resign. *See* Gov.Bar R. VIII(1)(A); *Berling* at ¶ 27, 30 (Fischer, J., dissenting); *Leone* at ¶ 33-36 (Fischer, J., dissenting); Court News Ohio, Staff Report, *Victims of Attorney Theft Awarded More Than $212,000 by Lawyers' Fund* (Dec. 19, 2024), https://www.courtnewsohio.gov/happening/2024/LFCP_121924.asp (accessed Jan. 23, 2025) [https://perma.cc/SUU5-HWDC]. We cannot do that when we do not know whether the resigning attorney has the present or future ability to pay restitution.

**{¶ 29}** To resolve this problem, an attorney who wishes to resign with discipline pending and who still owes money to former clients should voluntarily provide this court and/or disciplinary counsel with financial statements, bank statements, income-tax records, and other basic financial information under oath or submit to a judgment-debtor exam. *See Berling* at ¶ 32 (Fischer, J., dissenting). This simple act would ensure that we have the necessary information to reasonably determine whether accepting an attorney resignation pending discipline is in the best interest of his or her former clients and the public. *Id.*

**{¶ 30}** Thus, I believe that the public, the bench, and the bar would be best served if this court were to maintain its jurisdiction over Stenson and allow disciplinary proceedings to continue. For these reasons, I respectfully dissent.

_____